ROBERT E. PEOPLES, Employee v. CONE MILLS CORPORATION, Employer,
Self-Insurer

No. 460PA84

(Filed 6 May 1986)

1. **Master and Servant § 68— byssinosis—disability—ability to perform tailored job**

    The Court of Appeals erred in a byssinosis action by sustaining the Industrial Commission's finding that plaintiff was physically unable to perform a modified supply room job Cone had offered him and was therefore disabled. All the evidence tended to show that plaintiff was capable of performing the physical requirements of the supply room job because Cone had modified the job to make it entirely sedentary; Cone would make the job available to plaintiff on a part-time basis so that he would not have to work when he did not feel like working; the medical testimony was uncontroverted that plaintiff was capable of that kind of totally sedentary employment; and the evidence was that current environmental conditions in the supply room would not endanger plaintiff's health.

2. **Master and Servant § 68— byssinosis—ability to perform tailored job—no evidence of ability to earn wages**

    A job offered to a byssinosis victim by Cone could not be considered as evidence of the victim's ability to earn wages because the job had been so modified to fit the victim's limitations that it was not ordinarily available in the competitive job market. The Workers' Compensation Act does not permit Cone to avoid its duty to pay compensation by offering employment which the injured employee could not find elsewhere under normally prevailing market conditions and which Cone could terminate at will or for reasons beyond its control. N.C.G.S. 97-2(9).

3. **Master and Servant § 68— byssinosis—total disability—availability of appropriate employment**

    The Industrial Commission did not err in a byssinosis case by awarding plaintiff compensation for total and permanent disability under N.C.G.S. 97-31 where there was uncontradicted medical testimony that plaintiff could perform sedentary employment. There was evidence that plaintiff had little education and was of such an advanced age that he would have scant hope of using more education after he obtained it; plaintiff had worked at Cone almost his entire adult life and had no vocational training other than at Cone, where he had performed only physically demanding, unskilled work; and plaintiff had no experience even with simple household financial matters. An employee need not prove that he unsuccessfully sought employment if he proves he is unable to obtain employment.

4. **Master and Servant § 68— byssinosis—total disability—tailored job refused**

    A byssinosis plaintiff was not precluded from receiving compensation under N.C.G.S. 97-32 because he refused employment suitable to his capacity where Cone created for him a position not ordinarily available in the job

Peoples v. Cone Mills Corp.

market. The Industrial Commission properly determined that plaintiff is permanently totally disabled and N.C.G.S. 97-32 cannot apply to bar him from receiving compensation.

Justice MEYER dissenting.

Justice BILLINGS took no part in the consideration or decision of this case.

ON defendant's petition for further review pursuant to N.C.G.S. § 7A-31 (1981) of a decision of the Court of Appeals, 69 N.C. App. 263, 317 S.E. 2d 120 (1984), affirming a workers' compensation award by the Industrial Commission.

*Kirby, Wallace, Creech, Sarda & Zaytoun by John R. Wallace for plaintiff appellee.*

*Smith, Moore, Smith, Schell & Hunter by J. Donald Cowan, Jr. and Caroline Hudson for defendant appellant.*

EXUM, Justice.

This is an occupational lung disease case. The Industrial Commission awarded plaintiff, Robert E. Peoples, compensation for total and permanent disability. Defendant, Cone Mills Corporation (hereafter Cone), appealed to the Court of Appeals. As alternative grounds to support its position that plaintiff is not entitled to compensation, Cone argued: (1) Plaintiff is not disabled within the meaning of the Workers' Compensation Act, N.C.G.S. § 97-2(9), because Cone offers plaintiff employment consistent with his medical limitations at no reduction in salary; and (2) N.C.G.S. § 97-32 bars plaintiff from compensation because he is not justified in refusing tendered employment suitable to his capacity. The Court of Appeals concluded that although the evidence is conflicting, it supports the Commission's finding of fact that the job Cone offers plaintiff is incompatible with plaintiff's medical limitations. Accordingly, it affirmed the Commission's award.

The questions presented by this appeal are: (1) Whether the evidence supports the Commission's finding that the proffered employment is not suitable to plaintiff's capacity; (2) even if the evidence does not support such a finding, whether plaintiff is nevertheless disabled and entitled to compensation; and (3) if

plaintiff is disabled, whether N.C.G.S. § 97-32[1] operates as a bar to compensation.

## I.

Plaintiff was born 6 December 1929 and completed the fifth grade. Cone is a textile manufacturing corporation. Plaintiff began working in the card room of Cone's Edna Plant in 1955. He worked there for twenty-four years and was promoted to card room supervisor. Plaintiff was continually exposed to cotton dust and lint in the card room.

Plaintiff noticed his breathing problem after working for several years. He experienced chest tightness, a rasping cough, and breathing difficulty when he came to work on Mondays after spending the weekend away from the plant. These symptoms eventually began to appear on every day of the week. Dr. George Kilpatrick, Jr., a pulmonary specialist, examined plaintiff on 20 June 1978. He diagnosed plaintiff as having chronic obstructive pulmonary disease with a byssinosis component. He categorized plaintiff as having moderate lung impairment. Another pulmonary specialist, Dr. Mario Battigelli, confirmed Dr. Kilpatrick's diagnosis. When Cone learned of Dr. Battigelli's diagnosis, it transferred plaintiff from the card room to the supply room to avoid exposing him further to cotton dust.

In the supply room plaintiff filled parts orders, handled parts shipments and took inventory. His work required bending, lifting, reaching and walking. After working four days in the supply room plaintiff was hospitalized because of chest pain and breathing difficulty. Plaintiff testified the supply room job was tiresome. He said, "I had to rest practically the whole 16 hours that I was home just to be able to get back and make it." Plaintiff also stated that dust filtered down from the production areas through the elevator and flooring into the supply room and "it was bothersome." Plaintiff did not return to work after he was discharged from the hospital.

Cone expressed a desire to employ plaintiff despite his medical limitations. Cone modified an existing third shift supply room position and offered it to him. Cone's attorney wrote plaintiff's attorney describing the position as follows:

---

1. This statute is quoted in full, *infra,* p. 444.

(1) The environment was lint and dust free;

(2) The lifting or physical exertion requirements were as light in this position as any other place in the plant;

(3) This position is currently being occupied by a female employee on other shifts, and this position is traditionally held by a female employee;

(4) At the time Mr. Peoples was offered this job, he was informed that it would not require any reduction in his current salary;

(5) The volume of work in this position is not great, and it would not be unusual for as much as an hour to pass at this job when there were no requests for orders to be filled;

(6) Although there may be heavier parts in the room, it is my understanding that 90% of the parts required to be moved would weigh five pounds or less. If there were objects that weighed more than this, or if there were objects that Mr. Peoples felt he could not lift, the fixer who had taken the order to the supply room would be available to assist or move the object himself.

. . . Additionally, Cone has indicated to me that it is perfectly agreeable with them for Mr. Peoples to attempt to come back to this job on a part-time basis rather than feel any pressure to work a full eight-hour day.

During the hearing Randolph Stephenson, personnel manager at Cone's Edna Plant, confirmed the supply room position remains available to plaintiff. He stated that because of plaintiff's limited ability to work the job description recited above should be modified to mean that plaintiff will not be required to lift *any* object. Because plaintiff will lift no parts, the person who comes to the supply room with a parts order will lift the requested part. Further, plaintiff will not have to engage in any physical activity of which he does not feel capable. He will work only the number of hours he desires and will not be required to work if he does not feel like doing so. Stephenson testified a job such as the one Cone offered plaintiff has never before existed at Cone's Edna Plant. It

was created especially for plaintiff with his physical limitations in mind. Cone desires to retain plaintiff despite his limitations because of his "knowledge of the operation." Stephenson stated no person other than plaintiff would be hired to work in the supply room at the wages he was offered. Furthermore, there is no position at Cone other than the modified supply room job which plaintiff can fill.

The Industrial Commission employed an industrial hygienist, Melvin Witcher, to evaluate the dust content in the supply room at Cone's Edna Plant. Mr. Witcher testified the supply room area is "very clean." In it there is no appreciable accumulation of dust. He reported a dust concentration reading of ninety-eight micrograms per cubic meter, well below the five-hundred-microgram limit permitted by OSHA regulations. The ninety-eight-microgram reading is comparable to the dust level one would expect to find in a typical office room or outside on a clear fall day. Although the instruments he used provided a quantitative rather than a qualitative measure of dust, he believed much of the dust collected was nuisance dust or dust similar to that which would be found in a house or office.

Evidence relating to plaintiff's earning ability was presented to the Industrial Commission. Dr. Kilpatrick believed that plaintiff was unable to work in all but sedentary employment. Dr. Battigelli testified "even a menial, a minimal amount of activity indeed may be taxing Mr. Peoples' tolerance to a significant extent." Dr. Kilpatrick was not aware of a job situation a person with plaintiff's qualifications could do which did not require physical exertion.[2]

Both physicians were of the opinion that plaintiff could not work in an environment in which he would be exposed to substantial quantities of cotton dust. Dr. Battigelli added, "I think cotton

---

2. Dr. Kilpatrick elaborated on this opinion saying:

"I'm not aware of a job situation that he could do. What I'm saying is that if he has self-employment in which he can sit by a telephone and maybe make guesses on what the best stock is to invest in and read on it and this type of thing, if somebody wanted to employ him for that, then he probably could do all right. You know, Jimmy the Greek probably does pretty good on things just like that. But I don't think Mr. Peoples probably could get employment in that."

dust exposure as well as any exposure to any irritant will deterio-
rate his condition unequivocally." ·

Both physicians believed, however, an environment similar to
that reported by Mr. Witcher as existing in the supply room
would not be harmful to plaintiff's health. Dr. Kilpatrick testified:

Q. The quantity of dust, regardless of cotton dust, that
would be necessary to aggravate or cause Mr. Peoples' prob-
lems, would have to be greater than is present in the type of
office environment we're in right now, isn't that correct?

A. That's correct.

Dr. Battigelli gave similar testimony:

Now, Doctor, with regard to the position that has been
offered and assuming the ·dust levels that are indicated as
per the Industrial Hygiene Survey Report, which you have
before you — do you have an opinion as to the suitability of
that position for Mr. Peoples?

A. Yes, I do.

Q. All right, Doctor, what would that opinion be?

A. That in my view would be acceptable and compatible
with my understanding of Mr. Peoples' ability to perform
work — to sustain in — employment.

Dr. Thomas K. White, a psychologist with expertise in voca-
tional rehabilitation and job skills testified: "Such an individual
[as plaintiff] could not undertake a job existing in the regional and
national economies in significant numbers." With respect to the
job Cone offers plaintiff, Dr. White stated: "[I]n my review of the
description of the job . . . as compared with the jobs that are
open in the market, it appears to me that there is not a job like
that available anywhere to my knowledge. . . . I am not aware of
a job on the market like that job." He explained:

I am not aware of any job on the market today similar to
that job with the same pay scale. . . . [U]nder item 5, it says
the volume of work in this position is not good. Traditionally,
supply room jobs are characterized by a pretty fast pace, a
brisk level of activity. . . . [T]his is not really a standard job
which is in existence in the labor market but that this is go-

ing to be a tailored, engineered type of job. . . . Concerning the description in the beginning paragraph after paragraph 6 that that job would be available on a part-time basis and then convert to a full-time basis depending on the individual's feeling about work, that is unique.

Dr. White thought the job was "engineered and designed specifically for an individual."

## II.

Cone's first assignment of error is that the Court of Appeals erred in holding that plaintiff is disabled. An employee seeking non-scheduled compensation for occupational disease must prove that such a disease resulted in "disablement." N.C.G.S. § 97-52. Disablement generally means the equivalent of "disability." N.C.G.S. § 97-54. Disability means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C.G.S. § 97-2(9). Cone concedes plaintiff is incapable as a result of occupational disease of earning wages in his former employment as a card room supervisor. Cone argues plaintiff is capable of receiving wages at "other employment," however, because Cone is willing to employ plaintiff in a job tailored to plaintiff's physical limitations. Cone offers to employ plaintiff at no reduction in wage in its Edna Plant supply room. The Industrial Commission made specific findings of fact regarding plaintiff's ability to perform this job. It found, "the work's actual physical requirements exceed plaintiff's physical capacity and the environmental conditions would aggravate and endanger plaintiff's health."

## A.

[1] The scope of appellate review of questions of fact is limited. The Industrial Commission is constituted as the fact-finding body in workers' compensation cases. *Watkins v. City of Wilmington,* 290 N.C. 276, 225 S.E. 2d 577 (1976). The authority to find facts necessary for an award is vested exclusively in the Commission. *Moore v. Electric Co.,* 259 N.C. 735, 131 S.E. 2d 356 (1963). The Commission's fact findings will not be disturbed on appeal if supported by any competent evidence even if there is evidence in the record which would support a contrary finding. *Jones v. Desk Co.,* 264 N.C. 401, 141 S.E. 2d 632 (1965). Where, however, there is a

complete lack of competent evidence in support of the findings they may be set aside. *Click v. Freight Carriers*, 300 N.C. 164, 265 S.E. 2d 389 (1980); *Logan v. Johnson*, 218 N.C. 200, 10 S.E. 2d 653 (1940). Cone argues the Court of Appeals erred in affirming the Commission's findings regarding plaintiff's inability to perform the supply room job because they are not supported by evidence in the record. We agree.

All the evidence tends to show plaintiff is capable of performing the physical requirements of the supply room job because Cone has modified it to make it entirely sedentary. Cone agrees to allow plaintiff to sit at a desk in the supply room. He will not be required to lift any parts or engage in any physical activity of which he does not feel capable. Persons who come to the supply room with a parts order will obtain the part.[3] Additionally, Cone will make the job available to plaintiff on a part-time basis so that he will not have to work when he does not feel like doing so.

The medical testimony is uncontroverted that plaintiff is capable of this kind of totally sedentary employment. His physician, Dr. Kilpatrick, stated: "So long as he is not exposed to physical exertion, then he is perfectly capable of performing a sedentary job." More to the point of plaintiff's ability to perform the modified supply room position, Dr. Battigelli testified:

Q. . . . [D]o you have an opinion as to whether or not Mr. Peoples is able to perform a job with the characteristics listed in Defendant's Exhibit Number 2 with those pulmonary problems?

A. [A] work position which is tailored to the ability of the person to do whatever such a person can do, avoiding anything that such a person believes cannot do, . . . then I would say that such a position would be compatible.

Q. And by 'compatible' what do you mean by that?

A. Could be accepted and feasible and—and consistent with the—with the residual ability that I recognized in Mr. Peoples' medical ability, physical ability, energy ability. . . .

3. Plaintiff's responsibility is only to make certain the person leaves with the correct part. Other responsibilities of plaintiff are to receive incoming calls to the plant and mark computer cards for each item distributed.

Equally devoid of any evidentiary support is the Commission's finding of fact that the environmental conditions in the supply room would endanger plaintiff's health. Melvin Witcher testified there was no appreciable accumulation of dust in the supply room. The dust concentration of ninety-eight micrograms was "quite low" in relation to permissible limits. There was little difference between the quality of air in the supply room and an office environment.[4] His opinion was that much of the dust collected in the supply room was nuisance dust rather than cotton dust. Both physicians testified the quantity of dust measured in the supply room by Mr. Witcher would not be harmful to plaintiff's condition.

Because it is not supported by the evidence, the Commission's finding that the proffered job's environmental conditions would endanger plaintiff's health must be rejected.[5]

We hold, therefore, the Court of Appeals erred in sustaining the Industrial Commission's finding that plaintiff is physically unable to perform the modified supply room job Cone offers him.

## B.

[2] Although plaintiff is capable of performing it, Cone's tendered employment, as a matter of law, is no indication of plaintiff's ability to earn wages. Disability is defined by the Act as impairment of one's earning capacity rather than physical disablement. N.C.G.S. § 97-2(9). "Under the Workmen's Compensation Act disability refers not to physical infirmity but to a diminished

_____

4. The 98 micrograms of dust collected in the supply room was actually less than the 130-microgram sample taken from the Personnel Manager's Office. The Personnel Manager's Office is in a building detached from the operations building at Cone's Edna Plant.

5. The only evidence that, standing alone, might support this finding is plaintiff's testimony that cotton dust filtered into the supply room through the floors and elevator and was "bothersome." This evidence was based on plaintiff's experience working in the supply room in 1978. There is evidence that conditions in the supply room were not the same in 1979 as they were in 1978. Cone offered evidence that there has been a general lessening in the quality of cotton dust in the air in its Edna Plant since 1979 as a result of OSHA requirements and its own efforts. Furthermore there is no processing of cotton and synthetic blends and the output has been reduced at Edna since plaintiff was there. In light of uncontroverted evidence that conditions in the supply room have changed since plaintiff's experience there, we conclude plaintiff's testimony based on his experience there will not support the finding.

capacity to earn money. *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265 [1951]; *Dail v. Kellex Corp.*, 233 N.C. 446, 64 S.E. 2d 438 [1951]; *Hill v. DuBose*, [234 N.C. 446, 67 S.E. 2d 371 (1951)]; *Watts v. Brewer*, 243 N.C. 422, 90 S.E. 2d 764 [1956]; *Barnhardt v. Cab Co.*, 266 N.C. 419, 146 S.E. 2d 479 [1966]." *Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 84, 155 S.E. 2d 755, 761 (1967).

In *Ashley* an employee suffered severe burns in a work-related accident. Before he resumed working, he spent several months in convalescence. During that time he received his full salary. His employer argued he was never disabled within the meaning of the workers' compensation statutes because he never ceased receiving the same wages he earned before his injury. Speaking through Justice, now Chief Justice, Branch, the Court held:

> In the instant case it would indeed be harsh to deprive claimant of medical expenses otherwise due him on the theory that his capacity to earn wages was not diminished because his employer saw fit, from motives of generosity or otherwise, to continue to pay the same wages after his injury. It would strain credulity to hold that an employee who was in a semi-conscious condition for ten weeks after an injury, or confined to the hospital in a cast, was not disabled. A *fortiorari* [sic] the act of his employer in paying his wages in full from the date of the injury should not be determinative of the employee's disability and thereby relieve the employer or insurance carrier from liability for hospital and medical care designed to improve his capacity to earn wages. It would be unconscionable to hold that a man who had been so severely burned and disfigured that he is unable to hold a pencil, pick up a water glass, or lift his arm high enough to comb his hair, has not suffered any diminished capacity to earn wages simply because his employer, for an indeterminate period of time, continues to pay claimant the same wages he received before the injury. The rule adopted by the majority of the decisions since *Branham v. Panel Co.*, [223 N.C. 233, 25 S.E. 2d 865 (1943)], is: Under the Workmen's Compensation Act disability refers not to physical infirmity but to a diminished capacity to earn money.

*Id.* at 83-84, 155 S.E. 2d at 761. The Court explained why post-injury earnings of an employee may under some conditions not accurately reflect the employee's earning capacity:

Certainly the amount of wages received by the employee after his injury should be strong evidence of his capacity or incapacity to earn wages, but under the conditions here disclosed receipt of wages in the amount received before the injury cannot be conclusive proof that no 'disability' exists. *How long will employer continue to employ claimant if his condition remains unchanged? What would become of claimant if employer should not continue his business? Must claimant continue to be employed by the same employer against his will in order to receive payment of compensation . . . ?*

*Id.* at 85, 155 S.E. 2d at 762 (emphasis supplied).

The principle underlying the holding of *Ashley* was elucidated by *Allen v. Industrial Commission,* 87 Ariz. 56, 347 P. 2d 710 (1959). In that case an employee was injured when a tire exploded as he was inflating it. The employee was a thirty-six-year-old service salesman with nine years' experience with the company when the accident occurred. His duties were to make sales calls on commercial accounts and to change customers' tires. After the accident occurred the employee returned to his service salesman position. He, his employer and his doctors testified he could not work as efficiently as before the accident. His employer stated the employee had no chance of being employed by other companies. His own company would not have hired a person in the employee's condition if not for the company's policy to keep disabled workers on the job at the same pay. The Industrial Commission found that plaintiff suffered no loss of earning capacity because he was employed after his injury at no reduction in wage. The Arizona Supreme Court reversed.

The court stated post-accident earnings are not the conclusive measure of earning capacity. It said:

Also to be taken into consideration is whether the post-injury earnings are a proper index of the employee's earning capacity or whether the amount of such earnings truly reflects other considerations which may exaggerate such capacity and be only of a temporary nature.

*Id.* at 65, 347 P. 2d at 716 (citations omitted). The court concluded:

> The sole evidence to support the Commission's finding was petitioner's actual post-injury earnings. These earning were not evaluated in the light of whether there was a change of business conditions or an adjustment in wages for economic reasons in the almost two-year period between the date of the injury and the date petitioner's condition became stationary. Nor did the Commission adequately consider the policy of the employer to retain at their previous wages all employees disabled as the result of on-the-job injuries. *Thus, wages may reflect not the employee's earning capacity in a competitive situation but rather a company policy which, if abrogated for any reason by the employer, will force the employee into a position where he will be unable, because of his injuries, to continue to earn such wages or to secure equivalent employment.*

*Id.* at 67-68, 347 P. 2d at 718 (emphasis supplied).

The *Allen* and *Ashley* cases rest on the principle that an injured employee's earning capacity must be measured not by the largesse of a particular employer, but rather by the employee's own ability to compete in the labor market. If post-injury earnings do not reflect this ability to compete with others for wages, they are not a proper measure of earning capacity.

> The ultimate objective of the disability test is . . . to determine *the wage that would have been paid in the open market under normal employment conditions to claimant as injured* . . . .

> Wages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity, and for purposes of determining permanent disability are to be discounted accordingly. The same is true if the injured man's friends help him to hold his job by doing much of his work for him, or if he manages to continue only by delegating his more onerous tasks to a helper, or if the work for which claimant is paid is 'made work' or 'sheltered work.'

2 A. Larson, *The Law of Workmen's Compensation* §§ 57.21, 57.34 (1983) (footnotes omitted) (emphasis supplied).

The same principle applies when a person has been offered but has not accepted employment after an accident. If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level. The same is true if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market. The rationale behind the competitive measure of earning capacity is apparent. If an employee has no ability to earn wages competitively, the employee will be left with no income should the employee's job be terminated. Termination of the employee would not necessarily signal a bad motive on the part of the employer. An employer facing a business decline reasonably could determine that continued retention of the employee was not feasible. The employee also could be dismissed for misconduct. The employer could, for reasons beyond its control, simply cease doing business.

In this case the supply room employment Cone offers plaintiff is not an accurate measure of plaintiff's ability to earn wages in a competitive market. There is no evidence other employers besides Cone would hire plaintiff at the wage Cone is offering. Randolph Stephenson, personnel manager at Cone, admitted no person other than plaintiff would be hired to work in the supply room at the wage offered plaintiff. Dr. White, an expert in vocational rehabilitation and job skills, testified: "[I]t is unusual to find a supply room job which would have so high a level of salary." He was "not aware of a job on the market today similar to that job with the same pay scale." Similarly, all the evidence tends to show Cone has so modified the supply room position because of plaintiff's medical condition that the position would not be offered in the competitive job market. Dr. White concluded: "There's not a job like this for an individual on the market." It is "engineered and designed for an individual." The Court of Appeals accurately described the unique opportunity Cone offers plaintiff as follows:

> Theoretically, given our understanding of Mr. Peoples' medical limitations, defendant is willing to pay him the same salary in the supply room job that he was earning as a super-

visor without regard for whether he comes to work, how long he stays, and how much he does while he is there.

*Peoples v. Cone Mills Corp.*, 69 N.C. App. 263, 272-73, 317 S.E. 2d 120, 126. We can conceive of no employer other than Cone who would employ plaintiff on these terms.

The Workers' Compensation Act does not permit Cone to avoid its duty to pay compensation by offering an injured employee employment which the employee under normally prevailing market conditions could find nowhere else and which Cone could terminate at will or, as noted above, for reasons beyond its control.

We hold the job Cone offers plaintiff cannot be considered as evidence of plaintiff's ability to earn wages.

## C.

In holding that plaintiff is disabled, the opinion below states, "An employer may *not* avoid its liability under the workers' compensation law by offering an injured employee a job at his old wage that is within his ability to perform." *Id.* at 275, 317 S.E. 2d at 127. The Court of Appeals made this statement while attempting to distinguish some equally potentially misleading language which appears in a decision by this Court in *Branham v. Panel Co.*, 223 N.C. 233, 25 S.E. 2d 865 (1943), where we said:

> However urgently he may insist that he is 'not able to earn' his wages, the fact remains that he is receiving now the same wages he earned before his injury. That fact cannot be overcome by any amount of argument. It stands as an unassailable answer to any suggestion that he has suffered any loss of wages within the meaning of the Act.
>
> . . . .
>
> But the appellant contends that he is not now earning his wages; that they are paid to him 'because of his long service and the sympathetic attitude of his employer.' Hence, he says, he is not now 'able to earn' and is not earning any wage. Conceded, *arguendo*, the final result is the same. While the employer here, as is ordinarily the case, has an insurance carrier standing by under contract to pay whatever it is called upon to pay, it is the one primarily liable. It is paying

and the employee is receiving more than the assessable amount of compensation. What boots it whether the 'wages' received by him are paid for services rendered or as compensation for the injury received? In either event, under the express terms of the Act, he cannot recover additional compensation.

223 at N.C. 237, 25 S.E. 2d at 868.

While language in *Branham* may erroneously imply the earning capacity of an employee cannot decrease so long as the employee suffers no reduction in wages after an injury, the statement from the opinion below, by suggesting post-injury employment of an employee by the employer can never reflect an ability to earn wages, errs in the opposite extreme.

The principle we adopt in this case resolves the inconsistency between the two opinions. The statement in *Branham* that there is no disability if the employee is receiving the same wages in the same or other employment is correct only so long as the employment reflects the employee's ability to earn wages in the competitive market. In like manner the language in the opinion below that an employer may not avoid liability under the Act by offering an injured employee a job at his old wage within his ability to perform is accurate only if the proffered job is not available generally in the market. If the proffered job is generally available in the market, the wages earned in it may well be strong, if not conclusive, evidence of the employee's earning capacity.

### III.

[3]  Although Cone's offer of employment has no bearing on it, an issue remains as to whether the Industrial Commission erred in awarding plaintiff compensation for total and permanent disability under N.C.G.S. § 97-31. In workers' compensation cases a claimant ordinarily has the burden of proving both the existence and degree of disability. *Hall v. Chevrolet Co.*, 263 N.C. 569, 139 S.E. 2d 857 (1965). Cone contends plaintiff has proved at most that he is only partially disabled; and if compensated at all, plaintiff should be compensated only under N.C.G.S. § 97-30 for partial disability.[6] Cone concedes that plaintiff is unable to return to his old job in the card room, but it relies upon uncontradicted testimony

---

6. Cone assigns no error to the Commission's conclusion that plaintiff's lung disease is permanent.

by Drs. Battigelli and Kilpatrick which, describing plaintiff's condition as moderate pulmonary impairment, agreed, from a medical standpoint, that plaintiff can perform sedentary employment.

That plaintiff can perform only sedentary work does not in itself preclude the Commission from making an award for total disability if it finds upon supporting evidence that plaintiff because of other preexisting limitations is not qualified to perform the kind of sedentary jobs that might be available in the marketplace. If preexisting conditions such as the employee's age, education and work experience are such that an injury causes the employee a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the actual incapacity he or she suffers, and not for the degree of disability which would be suffered by someone younger or who possesses superior education or work experience. *Little v. Food Service*, 295 N.C. 527, 532, 246 S.E. 2d 743, 746 (1978).

It follows where occupational lung disease incapacitates an employee from all but sedentary employment, and because of the employee's age, limited education or work experience no sedentary employment for which the employee is qualified exists, the employee is entitled to compensation for total disability. *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E. 2d 359 (1983). Evidence in *Rutledge* tended to show that chronic obstructive lung disease prevented claimant from doing anything but sedentary work. The claimant in *Rutledge* was forty-eight years old and possessed a tenth-grade education. She began working in a cotton mill at age eighteen and labored in the textile industry for twenty-five years before becoming disabled. She acquired no vocational training except for what she received in the mill. The Court held:

> From this evidence the Commission could have found as facts, although it would not have been compelled to find, that: . . . (8) because of her age, limited education, and her lifetime of employment in the textile industry, claimant is neither trained nor qualified to do other kinds of work and, at this time, is not able to be gainfully employed . . . .

*Id.* at 106, 301 S.E. 2d at 372. For cases to like effect decided by the Court of Appeals, see *Anderson v. Smyre Manufacturing Co.*, 54 N.C. App. 337, 283 S.E. 2d 433 (1981);

*Mabe v. Granite Corp.*, 15 N.C. App. 253, 189 S.E. 2d 804 (1972) (evidence sufficient to support compensation award for total disability where lung disease rendered worker capable of performing only sedentary work for which worker's job training and skills did not qualify worker).

Here the Commission found in effect that because of plaintiff's lack of job skills there is no available sedentary employment for which plaintiff is qualified. The Commission found as a fact, to which Cone did not except, that plaintiff " 'could not undertake significant gainful employment existing in the regional and national economies in significant numbers' because of his lack of residual and transferable job skills."[7]

The evidence amply supports this finding. Plaintiff has little education and is of such advanced age that after the time it would take to obtain more education, he would have scant hope of using it. Now fifty-seven years old, plaintiff entered but did not complete the sixth grade. Plaintiff also has worked in textile manufacturing at Cone since he was twenty-five years old, almost his entire adult life. He has no vocational training other than at Cone where he performed only physically demanding, unskilled work. Plaintiff testified, "I don't know anything except the job skills I used in the mill which I feel are currently going unused." Plaintiff has no experience even with simple household financial matters. He testified his wife files their taxes, keeps their checkbook and handles their other financial affairs. Dr. White testified:

> I am saying that he does not have significant occupational characteristics that are residual and transferable that

---

7. The Industrial Commission frequently couches its findings of fact in the form of recitations of testimony without declaring whether it finds the testimony to be a fact. Here, for example, it found:

"Plaintiff was also examined by Dr. Thomas K. White, a private psychologist with special expertise in vocational rehabilitation and job skills. This doctor was of the opinion that plaintiff . . . 'could not undertake significant gainful employment existing in the regional and national economies in significant numbers' because of his lack of residual and transferable job skills."

We interpret the Commission's practice of reciting testimony to mean that it does find the recited testimony to be a fact. We, nevertheless, suggest to the Commission to make its findings in the form of declarations of facts rather than recitations of testimony.

they would suit him in terms of skills to obtain and hold significant gainful employment.

He concluded:

[Plaintiff] could not undertake significant gainful employment existing in the regional and national economies in significant numbers.

Thus, in addition to and independently of its erroneous findings concerning plaintiff's inability to perform the Cone supply room job, the Commission made a factual finding supported by evidence that supports its award for total disability.

Cone contends, nevertheless, that plaintiff failed to sustain his burden of proving that he is totally and permanently disabled because there is no evidence plaintiff attempted to obtain employment within his residual physical ability and failed. As authority for this argument Cone cites *Hilliard v. Cabinet Co.*, 305 N.C. 593, 290 S.E. 2d 682 (1982). In that case plaintiff, a finishing carpenter, developed an acute sensitivity to sawdust and paint fumes. He was forced to quit his job working in a cabinet shop. He testified, on the one hand, he was unable to obtain employment other than finishing carpentry work because of his age, inexperience and lack of education. He stated, on the other hand, he had "not gone out to seek any other jobs." The Industrial Commission concluded plaintiff was not disabled and denied compensation. This Court reversed and remanded. A majority of the Court regarded plaintiff's testimony pertaining to his lack of effort to obtain other employment as inconsistent with his testimony that he was unable to obtain other employment. The factual issue was whether plaintiff had tried and failed to obtain other work or whether he had simply not tried at all. Because the Commission in its findings of fact did not resolve this issue, the Court held the findings were insufficient to determine the rights of the parties and the case was remanded for additional findings. The Court cautioned, however, that it is "plaintiff's burden to persuade the Commission not only that he had obtained no other employment but that he was *unable* to obtain other employment." *Id.* at 295, 290 S.E. 2d at 684.

*Hilliard* simply states that, in order to prove disability, an injured employee must prove he is unable to work and not merely

that he unsuccessfully sought work. The converse is not true. In order to prove disability, the employee need not prove he unsuccessfully sought employment if the employee proves he is unable to obtain employment. An unsuccessful attempt to obtain employment is, certainly, evidence of disability. Where, however, an employee's effort to obtain employment would be futile because of age, inexperience, lack of education or other preexisting factors, the employee should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist. In this case all the evidence tends to show any effort by plaintiff to obtain sedentary employment, the only employment of which he is physically capable, would have been futile because of such preexisting factors.

The Court of Appeals, we conclude, did not err in affirming the Industrial Commission's conclusion that plaintiff is totally and permanently disabled under N.C.G.S. § 97-29 and entitled to compensation under that section.

## IV.

[4] Cone finally argues that plaintiff is precluded from compensation because he was not justified in refusing employment offered by Cone suitable to his capacity. N.C.G.S. § 97-32 provides:

If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified.

Cone's argument that this statute bars plaintiff from compensation has no merit.

A canon of statutory interpretation is that statutes dealing with the same subject matter must be construed together and harmonized, if possible, to give effect to each. *Coach Lines v. Brotherhood*, 254 N.C. 60, 118 S.E. 2d 37 (1960); *Justice v. Scheidt*, 252 N.C. 361, 113 S.E. 2d 709 (1960). If employers were able to avoid paying compensation merely by creating for their injured employees makeshift positions not ordinarily available in the market, N.C.G.S. § 97-32 would render N.C.G.S. § 97-29 meaningless. We believe the legislature never contemplated such a use of N.C.G.S. § 97-32. One purpose of that section is to prevent a

partially disabled employee from refusing employment within the employee's capacity in an effort to increase the amount of compensation payable to the employee. *Branham v. Panel Co.*, 223 N.C. 233, 236, 25 S.E. 2d 865, 867. Where an employee is properly determined to be totally and permanently disabled under N.C.G.S. § 97-29, N.C.G.S. § 97-32 has no application. The Commission here has properly determined that under N.C.G.S. § 97-29, plaintiff is permanently and totally disabled. This means that there is no employment "suitable to his capacity," and N.C.G.S. § 97-32 cannot apply to bar plaintiff from receiving compensation.

For all the reasons given above the opinion of the Court of Appeals is modified and affirmed.

Modified and affirmed.

Justice BILLINGS took no part in the consideration or decision of this case.

Justice MEYER dissenting.

The claimant here was a 46-year-old man suffering from "moderate pulmonary impairment." The majority flatly concedes that "all the evidence tends to show plaintiff is capable of performing the physical requirements" of an "entirely sedentary" job. As to the medical evidence in particular, the majority says, "The medical testimony is uncontroverted that plaintiff is capable of this kind of totally sedentary employment. His physician, Dr. Kilpatrick, stated: 'So long as he is not exposed to physical exertion, then he is perfectly capable of performing a sedentary job.'" Indeed, the majority refers to the "uncontradicted testimony by Drs. Battigelli and Kilpatrick which, describing plaintiff's condition as a moderate pulmonary impairment, agreed, from a medical standpoint, that plaintiff can perform sedentary employment."

Having established that the claimant here is capable of doing sedentary work, the burden is on the claimant to prove that no such work is available to him. The only evidence even remotely pertinent to this question comes from Dr. Thomas K. White, a private psychologist. That evidence, as the majority concedes, is only to the effect that claimant "could not undertake significant

gainful employment existing in the regional and national econo-mies in significant numbers." This was precisely the "finding" of the Commission—that the claimant "could not undertake signifi-cant gainful employment existing in the regional and national economies in significant numbers." By no stretch of the imagina-tion can this recitation of the evidence given by Dr. White be con-sidered a proper finding. Even if it had been an adequate finding of fact, it does not address the availability of sedentary jobs in the *local* economy. Nor does it speak to jobs that might be avail-able in less than "significant numbers."

The majority has stretched the record before us beyond the breaking point in stating that "[h]ere the Commission found in ef-fect that because of plaintiff's lack of job skills there is no available sedentary employment for which plaintiff is qualified." Most assuredly, it cannot be said that the Commission's recitation of Dr. White's testimony was "in effect" a finding that there is no available sedentary employment for which the claimant is quali-fied.

It is common knowledge that there are numerous sedentary jobs in the economy—the parking lot attendant who simply re-ceives money for parking, the factory timekeeper whose only job is to see that incoming and outgoing workers properly punch their time cards, the employee who takes orders by phone, the bank or factory guard who simply clocks people in and out of buildings, the cashier at the car wash, and perhaps a hundred others. Having determined that the claimant here is capable of sedentary work, surely it is not too much to ask that *someone* testify that no such jobs are available locally to this claimant. This case should be remanded to the Commission for a proper finding regarding the availability of sedentary jobs to Mr. Peoples.

This claim was litigated, argued, and briefed in the Court of Appeals and argued and briefed in this Court on the issue of whether the claimant is required to accept what the majority characterizes as a "make-work" job tendered to him by his employer, Cone Mills. Little or no attention has been paid throughout this proceeding to the question of whether there were available to the claimant other sedentary jobs in the local econ-omy. The evidence in the record before us on this issue is inade-

quate, and certainly there is no proper finding by the Commission on this issue. The conclusion on this issue by the majority is unsupported in the record. I vote to remand this case to the Commission for an appropriate hearing and a proper finding regarding the availability of sedentary jobs to the claimant.