Upon review and reconsideration of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence other than certain facts capable of judicial notice, or rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The parties stipulated to the following which the Commission finds as fact
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employee-employer relationship between the plaintiff and the defendant-employer [existed on April 9, 1993].
3. The defendant-employer is self-insured with Constitution Service Company as the servicing agent.
4. The plaintiff's average weekly wages may properly be calculated from the defendant's Form 22 submitted October 21, 1994, in lieu of the figure used on the Form 21 agreement. (Tr. pps. 7-8.)
5. Plaintiff suffered an injury by accident on April 9, 1993, resulting in a injury to his left knee. (Tr. p. 9.)
6. The defendant-employer admitted liability, and the parties entered into a Form 21 Agreement, approved August 28, 1993.
7. Workers' Compensation benefits were paid through April 27, 1994 and a Form 24 was approved on April 27, 1994.
* * * * * * * *
The Full Commission takes judicial notice of the following facts: 1) That the Federal minimum wage applicable to the parties from September 14, 1993 through March 31, 1994 was $4.25 per hour, or $170.00 per 40-hour week. 2) That the first Monday following September 14, 1993 was September 21, 1993. 3) That the first Monday in August of 1994 was August 1, 1994.
* * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff, age 52 at the time of the hearing before the Deputy Commissioner, had been a truck driver for approximately 25 or 26 years. Plaintiff was injured by accident during the course and scope of his employment with the defendant PYA Monarch/Sara Lee, resulting in an injury to his left knee. As a result of the injury, he stopped working on or about May 23, 1993. At the time of the injury by accident, plaintiff's average weekly wage was $772.94 which yields the maximum compensation rate for total disability in 1993 of $442.00 per week. This amount was calculated from a Form 22 sent in on October 21, 1994 by the defendant prior to the hearing. The average weekly wage amount of $750.00 listed on a Form 21 approved by the Industrial Commission on August 25, 1993 was incorrectly entered due to mutual mistake of the parties.
2. At the time of his injury, plaintiff was employed as a truck driver, whose duties included unloading groceries from the truck. After the injury, plaintiff was paid temporary total disability benefits at the rate of $442.00 per week through April 27, 1994.
3. Plaintiff's was treated by Dr. Russell Garland, an orthopedist of Charlotte, who eventually performed a diagnostic arthroscopy with partial medial meniscectomy on plaintiff's injured left knee.
4. Plaintiff was released to return to light duty work on August 10, 1993 with restrictions of limited standing and walking. These restrictions prevented plaintiff from returning to his previous job with the defendant, and plaintiff thereafter remained totally or partially disabled through the date of the hearing before the Deputy Commissioner. Plaintiff continued to have problems with his knee, and on or about December 16, 1993 Dr. Garland performed a partial medial meniscectomy for recurrent tear.
5. On October 13, 1993, while on light duty restrictions, plaintiff was terminated by the defendant-employer for "willfully conspiring to conceal his license revocation from his employer by taking an unscheduled vacation and three sick days during his ten day drivers' license revocation" prior to the injury. The plaintiff's commercial drivers' license had been revoked from March 28, 1993 through April 7, 1993 after plaintiff was arrested on suspicion of driving while under the influence of alcohol. Plaintiff testified that he concealed this fact from the defendant for fear of being fired. The employer was under a legal duty to use only properly licensed drivers. Plaintiff was discharged for good cause, and other employees would have been dismissed for the same conduct.
6. Shortly after his release to return to work on August 10, 1993, plaintiff tendered himself to the defendant-employer to begin light duty employment. Defendant contends that in September of 1993 a suitable light duty job was offered to plaintiff at his former salary. In light of the defendant's investigation of plaintiff's license revocation during this time period and the subsequent termination of plaintiff because of his license revocation, the number of defendant's employees involved in this personnel matter and the Deputy Commissioner's firsthand evaluation of the witnesses' conflicting testimony, plaintiff's recollection regarding the position actually offered to him, and its inappropriateness, is more credible. However, but for plaintiff's misconduct, plaintiff could have returned to a light duty job September 21, 1993 (Tr. p. 61) through December 16, 1993, at his former salary, in the defendant's temperature-controlled Operations Center, which involved communicating by radio, and which would have allowed him to sit or stand as needed, and otherwise was within his restrictions. By his conduct resulting in termination, plaintiff disqualified himself from this employment. This job was indicative of plaintiff's residual ability to earn wages. However, the wages he would have received were based on his prior earnings, and no evidence was offered that others were paid a similar salary, or that the putative job offer otherwise reflected plaintiff's actual wage earning capacity. The applicable minimum wage at that time was $4.25 per hour, and defendant has failed to prove that plaintiff was capable of earning greater wages. The best evidence of record shows that, as of September 21, 1993 plaintiff's wage earning capacity was reduced from $772.94 to $170.00 per week, yielding a compensation rate of $401.96.
7. Plaintiff was totally disabled from December 16, 1993 until January 21, 1994 due to his second surgery and subsequent recovery. Dr. Garland then opined plaintiff could return to work with light duty restrictions consisting essentially of sedentary activity. On February 14, 1994, Dr. Garland relaxed restrictions to consist of no prolonged standing and no squatting.
8. On or about March 31, 1994, plaintiff reached maximum medical improvement. Dr. Garland gave plaintiff a 20 percent permanent partial disability rating of the left leg and placed him on permanent restriction to the light medium category of labor with no squatting. Dr. Garland's notes stated his medical opinion that these restrictions would not allow plaintiff to return to his previous occupation. Dr. Garland had previously noted on March 14, 1994 that some sort of vocational rehabilitation might be necessary.
9. Except for his offer to return to work for the defendant, plaintiff did not seek employment prior to March, 1994. However, plaintiff's evidence of his work-related medical condition, inability to perform his former job, permanent partial disability, unsuccessful efforts to obtain employment between March 31, 1994 and August 1, 1994, narrow vocational background, age, and the lack of vocational assistance, met his initial burden of showing that he would be unable, with reasonable effort, to locate and obtain employment in the competative job market during the periods from his release to work on August 10, 1993 until his second surgery, and following that surgery until he reached maximum medical improvement. Defendant's evidence credibly demonstrates that plaintiff was capable of earning some wages in a suitable employment procured for him during the periods September 21 through December 15, 1993 and January 22 through March 31, 1994, for which his voluntary misconduct, prior to and unrelated to the injury, disqualified him.
10. Plaintiff continued to receive temporary total disability at the rate of $442.00 per week until approximately April 27, 1994, when the defendant's second Form 24 was approved. Plaintiff remained unemployed until on or about August 1, 1994, when he found work at Dollar Stores through his own efforts.
11. August 1, 1994 through September 2, 1994, plaintiff worked for a temporary service "checking trucks in" at a Dollar Stores facility. Plaintiff worked at Dollar Stores for 40 hours a week at $6.40 an hour for a total salary of $256.00 per week for three weeks.
12. After September 3, 1994, and for a 4 week period, plaintiff worked at Lakeside Tubing for 40 hours a week at $7.30 per hour for a total salary of $292.00 a week.
13. Plaintiff received a raise on or about October 2, 1994. Through the hearing date, plaintiff worked 40 hours a week at Lakeside Tubing at $7.65 per hour for a total salary of $306.00 per week.
14. From April 1, 1994 through the date of the hearing before the Deputy Commissioner, plaintiff had essentially the same vocationally relevant physical abilities, and he would have earned higher wages had he been employed during much of the preceding seven months. On and after April 1, 1994, plaintiff had a wage earning capacity of $306.00 per week, yielding a temporary partial disability benefit of $311.29.
* * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. An I.C. Form agreement signed by the parties and presented to the Commission for approval, which avers to a material matter that is not in fact true, and is not offered as a compromise upon uncertain facts, constitutes a mutual mistake of fact. The Form 21 agreement approved August 28, 1993 should be set aside due to mutual mistake of fact concerning plaintiff's average weekly wage. N.C. Gen. Stat. § 97-17.
2. The Full Commission may, in its discretion, take judicial notice of facts capable of ready determination by resort to sources whose accuracy cannot reasonably be questioned. A party may be heard on a meritorious objection by making a motion for reconsideration. N.C. Gen. Stat. §§ 8C-1, Rule 201; 1-279(c)(iii); I.C. Rule 702(1).
3. The employer is obligated to pay benefits for the inability to earn wages due to the compensable injury, but not that due to the employee's voluntary, wrongful act, unrelated to the injury, that limits the opportunity for employment. N.C. Gen. Stat. § 97-2(9).
4. Plaintiff has the initial burden of proving disability by reason of a compensable injury, and if that is shown, the burden is on the defendant to show that the plaintiff retains the capacity to earn wages. N.C. Gen. Stat. § 97-29; Peoples v. ConeMills Corp., 316 N.C. 426, 443-44, 342 S.E.2d 798 (1986); Kennedyv. Duke University Medical Center, 101 N.C. App. 24, 32-33,398 S.E.2d 677 (1990); Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454 (1993). Plaintiff carried his burden, and defendants rebutted by showing that, but for his voluntary misconduct, unrelated to the injury, plaintiff could have earned some wages, though not pre-injury wages. That the employer would, under other circumstances, have been willing to pay pre-injury wages to an employee to whom it would otherwise owe compensation is not proof of the employee's actual wage earning capacity. Peoples, at 438-39.
5. As a result of the injury by accident on April 9, 1993, plaintiff is entitled to benefits for temporary total disability from the time he ceased working for the defendant on or about May 27, 1993 through September 20, 1993, and from December 16, 1993 through January 21, 1994. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to elect the greater of permanent partial disability benefits in respect to a 20% disability to his left knee, payable from the date of maximum medical improvement on March 31, 1994, and temporary partial disability benefits at the rate of $401.96 from September 21, 1993 through December 15, 1993 and January 22 through March 31, 1994, and at the rate of $311.29 from April 1, 1994 through the date of the hearing, and continuing for up to 300 weeks from the date of the injury or until further orders of the Commission, subject to a credit for temporary total disability paid by defendants during those periods. N.C.G.S. §§ 97-30; 97-31(15); Gupton v. Builders Transport, 320 N.C. 38, 42,357 S.E.2d 674 (1987).
7. Defendants shall pay all medical compensation expenses incurred by plaintiff as a result of the injury by accident of April 9, 1993. N.C. Gen. Stat. §§ 97-25; 97-2(19).
8. Plaintiff is entitled to compensation calculated based on an average weekly wage of $772.94 per week. N.C. Gen. Stat. § 97-2(5).
* * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. The Form 21 Agreement approved on April 27, 1994 is hereby SET ASIDE because of the parties' mutual mistake of fact concerning plaintiff's average weekly wage.
2. Subject to a credit for all compensation heretofore paid and the attorney's fee hereinafter approved, defendant shall pay plaintiff:
 a. Temporary total disability benefits at the rate of $442.00 per week for the period May 27 through September 20, 1993, and December 16, 1993 through January 21, 1994, and
 b. Temporary partial disability benefits at the rate of $401.96 per week for the periods September 21, 1993 through December 15, 1993 and January 22 through March 31, 1994, and at the rate of $311.29 per week from April 1 through the date of the hearing, and continuing for up to 300 weeks from the date of the injury or until further orders of the Commission, OR
 c. Permanent partial disability benefits for 40 weeks at the rate of $442.00 per week commencing April 1, 1994.
3. Defendants shall pay all medical compensation expenses resulting from the injury of April 9, 1993 when bills for same have been submitted to the carrier and approved in accordance with the rules of the Commission.
4. A reasonable attorney's fee equal to 25% of the compensation awarded herein is approved for plaintiff's counsel, and the carrier shall pay directly to counsel 25% of the accrued benefits awarded and elected by the plaintiff, and each fourth future check for compensation.
5. Defendant shall pay the costs due this Commission.
 S/ ___________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
JRW/md