Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence before the Deputy Commissioner, to receive further evidence or rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
Prior to the hearing, the parties entered into a Pre-Trial Agreement. This Pre-Trial Agreement is incorporated herein by reference.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. As aforementioned, all stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The I.C. Forms 18, 33, and 33R contained in the Industrial Commission file are received into evidence.
3. An I.C. Form 19 marked as "exhibit 1 stipulated" was received into evidence.
4. A set of medical records marked as "exhibit 2 stipulated" was received into evidence.
5. A job description marked as "exhibit 3 stipulated" was received into evidence.
6. Employment records marked as "exhibit 4 stipulated" were received into evidence.
7. Plaintiff's answers to defendant's first set of interrogatories were marked as "exhibit 5 stipulated" and received into evidence.
8. Subsequent to the hearing, a set of I.C. Forms 22s marked as "stipulated exhibit 6" were received into evidence.
* * * * * * * * * * *
Based upon all of the competent evidence adduced at the hearing before the Deputy Commissioner, the Full Commission makes the following additional
FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a fifty-six year-old male with an eighth grade education. Plaintiff had been employed for over thirty years with the defendant-employer.
2. Plaintiff has received no other formal education or course work since leaving the eighth grade.
3. Plaintiff's job experience other than working for the defendant-employer was limited. Plaintiff had some experience serving food, packing yarn, and pressing carpets.
4. Prior to February 16, 1994, plaintiff had preexisting arthritis and spinal stenosis in the region of his back. Plaintiff had a total hip replacement on the right in 1989. Plaintiff had preexisting problems with obtaining a penile erection.
5. At the time of the hearing, plaintiff was experiencing difficulty in holding a coffee cup in his hand without dropping it, counting money, and operating hand tools because of the problems with numbness in his hands.
6. On or about February 16, 1994, plaintiff was employed as a lift truck operator. Plaintiff's job duties included operating a lift truck (forklift) transporting material and storing equipment. Plaintiff was responsible for loading and unloading trucks and railroad cars.
7. On February 16, 1994, plaintiff was working in an area of the defendant-employer's plant where a mixing process was taking place. Plaintiff was operating a forklift when he backed into a post that had a twelve inch circumference. There was no headrest on the forklift. Plaintiff's neck jerked back. Plaintiff immediately experienced a sensation of pins and needles and numbness go down his arms and legs and a sensation of pain in the back of his neck. Plaintiff got off of the machine. A co-worker, Chris Foreman, observed plaintiff hit the post. Plaintiff and the co-worker took a break. During the break, plaintiff reported to Mr. Tucker, a working foreman, that he had struck a post and had almost broken his neck. Mr. Tucker told plaintiff to report the incident to Mr. Barbee. Plaintiff applied some red oil on his neck from a medicine cabinet and went back to work.
8. Upon going home on the evening of February 16, 1994, plaintiff experienced problems with stiffness in his neck. Plaintiff's wife went to a drugstore and purchased red oil for the plaintiff so he could apply it to his neck.
9. Over the next several weeks, plaintiff started experiencing numbness in his hands. Plaintiff continued to work for the defendant-employer.
10. On March 1, 1994, plaintiff sought medical treatment from Dr. Rufus S. Lefler III, for the problem with numbness in his fingertips. Dr. Lefler diagnosed plaintiff's condition as being carpal tunnel syndrome and referred plaintiff to an orthopedic surgeon, Dr. Forney Hutchinson.
11. Between July and August of 1994, plaintiff was treated by Dr. Hutchinson. Dr. Hutchinson suspected that plaintiff was experiencing numbness in his hands as a result of metabolic systemic problems such as diabetes and thyroid problems and referred plaintiff to a neurologist, Dr. Thomas J. Fox, Jr.
12. On August 17, 1994, plaintiff was examined by Dr. Fox. An MRI revealed that plaintiff had spinal stenosis extending from C3 to C6-7 and a disc herniation at C4-5. After reviewing the MRI, Dr. Fox diagnosed plaintiff as having sustained a radiculoneuropathy with evidence of spinal stenosis and referred plaintiff to Dr. Larry A. Rogers, a neurosurgeon, for surgical management.
13. On October 5, 1994, plaintiff began a course of treatment under the direction of Dr. Rogers. Dr. Rogers reviewed the MRI and determined that plaintiff was at serious risk of becoming paralyzed because of disc pressure on plaintiff's spinal cord. After a series of thorough questions concerning plaintiff's prior history by Dr. Rogers, plaintiff revealed for the first time to any of his health care providers that he had struck a post at work causing his neck to hurt in the winter of 1993-94. Plaintiff had not comprehended that the numbness that he was experiencing in his hands since that time was in any way related to the February 16, 1994 injury by accident. Until Dr. Rogers explained to the plaintiff that the striking of the post on February 16, 1994 was related to plaintiff's symptoms in his hands, plaintiff was unaware of the nature, seriousness, and probable compensable character of his injury.
14. On October 10, 1994, Dr. Rogers performed a diskectomy and interbody fusion surgery at the C3-4 and C4-5 region. Dr. Rogers performed this surgery in order to take pressure off of the spinal cord by removing some of the discs and bone. This surgery was necessary to effect a cure or lessen plaintiff's disability.
15. From February 16, 1994 to October 3, 1994, plaintiff continued to work for the defendant-employer.
16. As a result of the February 16, 1994 incident of striking a post at work, plaintiff sustained the central cord lesion injury treated by Dr. Rogers and independently diagnosed by Dr. Dupuy. When plaintiff jerked back as result of hitting the post, one vertebra slid over another enough to crimp plaintiff's spinal cord.
17. As of April 12, 1995, plaintiff had reached maximum medical improvement with regard to the back injury he sustained as a result of the February 16, 1994 striking of a post at work.
18. As a result of the February 16, 1994 striking of the post at work, plaintiff sustained a thirty-three percent (33%) permanent partial impairment to his back. Plaintiff's problems with impotence were pre-existing.
19. On October 7, 1994, plaintiff orally reported to Vernon Boozer, safety manager for the defendant-employer, that he injured his neck after hitting a post at work. Mr. Boozer conducted an investigation in response to plaintiff's report. Mr. Boozer interviewed Mr. Foreman who corroborated plaintiff's claim that he did hit a post. Mr. Boozer interviewed Mr. Tucker who admitted that he knew that plaintiff may have hurt himself.
20. There is a lack of sufficient evidence of record to support a finding that the defendant would have been able to have provided treatment to the plaintiff that would have minimized the seriousness of plaintiff's injury if the defendant had received written notice within thirty days of the February 16, 1994 injury by accident.
21. Mr. Boozer's investigation in October of 1994 resulted in Mr. Boozer having no reason to doubt Chris Foreman's statement that plaintiff did strike a post during chilly weather. There is insufficient evidence of record to make a finding that the defendant was unable to conduct a satisfactory investigation concerning the facts surrounding the injury because of plaintiff's failure to give written notice within thirty days of his February 16, 1994 injury by accident.
22. An I.C. Form 19 dated January 6, 1995 describing plaintiff's alleged injury by accident was received by the Industrial Commission on January 13, 1995. This Form 19 was signed by Mr. Boozer and was the first time that the defendant received written notice of the February 16, 1994 work-related injury.
23. At the time of the February 16, 1994 work-related injury, plaintiff's average weekly wage was $325.71.
24. As a result of the February 16, 1994 work-related injury, plaintiff has been unable to earn any wages for the time period beginning October 3, 1994 to the present and continuing.
25. The forklift job plaintiff was performing at the time of his injury by accident is not a suitable job that plaintiff can return to perform. Plaintiff is unable to operate the levers on the equipment because of the numbness that he experiences in his hands.
26. It would be futile for plaintiff to look for work given his age, educational background, and work experience, as well as his overall medical condition.
27. The defense of this claim was not based upon unfounded stubborn litigiousness.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. On February 16, 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer in that he sustained a spinal cord injury in the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has provided a reasonable excuse as to why he did not give written notice of the February 16, 1994 injury by accident. Defendant has failed to prove that it has been prejudiced by the plaintiff's failure to provide written notice within thirty days of the injury by accident. N.C. Gen. Stat. § 97-22.
3. Plaintiff has proven by the greater weight of the evidence that as a result of his injury and resulting physical limitations and considering other pre-existing factors such as plaintiff's age, lack of education and prior work experience which involved manual labor, plaintiff has been incapable of earning wages in his same employment and that it would be futile to seek other employment. Peoples v. Cone Mills Corp. 316 N.C. 426 at 444; 342 S.E.2d 798 at 809 (1986). The defendants have not shown there is employment available which plaintiff could have obtained when considering his age, education, work experience and physical limitations. Russell v. Lowes Product Distribution, 108 N.C. App. 762
(1993); N.C. Gen. Stat. § 97-2(9).
4. Plaintiff is permanently and totally disabled.
5. Plaintiff is entitled to receive permanent and total disability compensation at a rate of $217.15 beginning October 3, 1994 and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have defendants provide all medical treatment arising from plaintiff's spinal cord injury to the extent that such treatment tends or tended to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
7. This claim was defended based upon reasonable grounds. N.C. Gen. Stat. § 97-88.1.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Because permanent and total disability compensation paid pursuant to N.C. Gen. Stat. § 97-29 is the more favorable remedy, defendant shall pay to the plaintiff permanent and total disability compensation in the amount of $217.15 per week beginning October 3, 1994 and continuing until further order of the Industrial Commission. The portion of this AWARD that has accrued shall be paid in a lump sum subject to the attorney's fee approved below.
2. Defendant shall pay all medical expenses incurred or to be incurred in the future by the plaintiff as a result of the February 16, 1994 injury by accident for so long as such examinations, evaluations and treatments tend to effect a cure or give relief when the bills for same have been submitted and approved through the procedures adopted by the Industrial Commission.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded in paragraph 1 is hereby approved for plaintiff's counsel. The accrued portion of the fee shall be deducted from the accrued benefits and paid directly to counsel for the plaintiff. Thereafter, defendant shall forward every fourth check of compensation benefits to plaintiff's counsel.
4. Defendant shall pay an expert witness fee in the amount of $200.00 to Dr. Rufus S. Lefler III, 235.00 to Dr. Forney Hutchinson, $195.00 to Dr. Thomas J. Fox, Jr., $530.00 to Dr. Larry A. Rogers, $390.00 to Dr. Ronald C. Demas and $530.00 to Dr. David N. Dupuy.
5. Defendant shall pay the costs.
 S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ ___________________ LAURA K. MAVRETIC COMMISSIONER