Defendants argue that the medical evidence fails to support a finding that plaintiff's disability resulted from the admittedly compensable accident, rather than pre-existing degenerative processes and/or the subsequent motor vehicle accident. In addition to the plaintiff's testimony, it is established that he was able to work up until the date of the accident, and has remained seriously impaired since. "There are many instances in which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of." Tickle v. Standard Insulating Company, 8 N.C. App. 5,173 S.E.2d 491 (1970); Phelps v. Duke Power Company,86 N.C. App. 455, 457, 358 S.E.2d 89 (1987). The Deputy Commissioner reasonably relied on plaintiff's testimony concerning the impact of these events and conditions.
As the plaintiff admitted that he has not attempted to find work since his injury, the issue is whether "an . . . effort to obtain employment would be futile because of age, inexperience, lack of education or other pre-existing factors . . . ." Peoples v. ConeMills Corp., 316 N.C. 426, 444, 342 S.E.2d 798 (1986); Russell v.Lowes Product Distribution, 108 N.C. App. 762, 765,425 S.E.2d 454 (1993). The evidence shows that, at the time of the hearing, the plaintiff was 47-years-old, had dropped out of the sixth grade at age 16, considered himself "a slow learner", had work experience as a truck driver with the defendant since 1978, and previously been employed in positions with greater physical demands. At that time, he was awaiting his fourth surgery, contemplated to remove instrumentation left on his spine during the fusion surgery in August 1989. He complained of great pain, although a videotape showing him walking without a limp, contrary to his testimony, cast some doubt on his veracity. Dr. Chewning testified that when he last saw the plaintiff in February of 1991, he had reached maximum medical improvement from the prior surgery and retained a 30% impairment of his back, limiting him to lifting 20 pounds and avoiding excessive pushing, pulling, bending, etc. The hearing Deputy was in the best position to resolve the credibility issues, and his findings are fully supported by the evidence.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner, and makes the following
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 47 years old with a date of birth of 3 September 1945. (He was 41 years old at the time of accident). Plaintiff left school in the sixth grade. He had worked as a truck driver since 1966, and he had worked for defendant as a truck driver since 1978. Plaintiff sustained a work-related accident to his back on 14 November 1985 while loading freight into a truck. Following this accident, plaintiff experienced pain in his mid back and down his left side. A CT scan was taken in 1985, and at that time, there was a bulge on the asymptomatic right side of disc L5-L6. Plaintiff returned to work at his regular job around 17 December 1985 and continued at this position through May 1987, for about one and a half years.
2. Plaintiff sustained an admittedly compensable injury by accident on 29 May 1987. The accident occurred when plaintiff fell while loading his truck and twisted his lower back. Plaintiff experienced pain in the right low back and down the right leg. Two weeks after the accident, plaintiff sought medical treatment from Dr. David Dye, an orthopedic surgeon. Dr. Dye excused plaintiff from work and recommended conservative treatment.
3. Plaintiff's pain did not improve, and on 8 July 1987 Dr. Dye ordered a CT scan. At the time of the CT scan, there was a large bulge at spinal disc L5-S1 with compression on the nerve root on the right side. Dr. Dye performed a lumbar laminectomy at level L5-S1 on the right. Following the surgery, plaintiff underwent a course of physical therapy.
4. In November 1987, about six months after the accident, plaintiff experienced increasing symptoms in his right leg. On 11 December 1987 plaintiff underwent a second lumbar laminectomy for relief from "recurrent herniated disc" at level L5-S1. Following surgery, plaintiff underwent a course of physical therapy. By July 1988, six months after the second surgery, Dr. Dye was of the opinion that plaintiff had reached maximum medical improvement and retained a 20 percent permanent partial impairment to the use of his back.
5. Plaintiff's symptoms persisted, and about one year after his second surgery, Dr. Dye ordered a discogram. On 20 January 1989, the discogram was performed. During the procedure, plaintiff demonstrated symptoms at level L4-5, although previous surgeries had been at level L5-S1. Dr. Dye discussed additional surgery, but plaintiff did not want the surgery at that time. Dr. Dye referred plaintiff to Dr. Samuel Chewning, an orthopedic surgeon specializing in treatment of spine disorders, for a second opinion. Dr. Chewning first examined plaintiff on 10 March 1989; and Dr. Chewning concurred with Dr. Dye that additional surgery would be appropriate. Plaintiff continued to receive treatment from Dr. Dye for three months after the examination by Dr. Chewning.
6. In August 1989 plaintiff returned to Dr. Chewning for the third surgical procedure performed on his spine. The procedure was a fusion at levels L4-5 and L5-S1 and an additional fusion at level S1-S2 which would be fused naturally in a normal spine. Following this surgery, plaintiff received treatment from both Dr. Chewning and Dr. Dye.
7. In January 1990 about five months after his third surgery, plaintiff was involved in a motor vehicle accident. Plaintiff's car was struck from behind, and plaintiff was wearing a seat belt and a back brace. The motor vehicle accident did not significantly aggravate the plaintiff's lower back, and did not result in any additional permanent partial impairment.
8. Following the third surgery, plaintiff participated in continuing physical therapy programs. On 19 February 1991, Dr. Chewning released plaintiff to return on an as-needed basis, and was of the opinion that plaintiff retained a 30 percent permanent partial impairment of his back. On 19 March 1991, Dr. Dye released plaintiff to return on an as-needed basis, and was of the opinion that plaintiff retained a 30 percent permanent partial impairment to the use of his back. After Dr. Dye examined plaintiff on 19 March 1991, plaintiff returned to Dr. Dye on 7 October 1991 (about 7 months later) and returned on 14 December 1992 (about 21 months later).
9. Due to the accident of 29 May 1987 and the resulting impairment to his back, plaintiff was unable to perform his regular job with defendant or any other gainful employment from 30 May 1987 through 19 February 1991. From 20 February 1991, plaintiff has not been able to return to his regular job with defendant, but he has been capable of returning to work at jobs which are sedentary or light duty in nature and which involve restrictions of lifting no more than 20 pounds. There is insufficient evidence of record from which the undersigned can infer that there are jobs actually available within the plaintiff's restrictions which plaintiff can reasonably be expected to obtain.
10. Due to the accident of 29 May 1987, plaintiff retains a 30 percent permanent partial disability of his back.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. As a result of the injury by accident of 29 May 1987, plaintiff is entitled to temporary total disability compensation in the amount of $297.70 per week for the period beginning 30 May 1987, through the date of the hearing, and continuing until such time as plaintiff returns to work, or defendants obtain permission from the Industrial Commission to stop payment. N.C.G.S. § 97-29.
2. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the accident of 20 May 1987. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation in the amount of $297.70 per week for the period from 30 May 1987, through the date of hearing, and continuing until such time as the plaintiff returns to work, or until the defendants obtain permission from the Industrial Commission to cease payment, subject to an attorney's fee as provided below. Defendants are entitled to a credit for any temporary total disability paid through the date of this Opinion and Award. Any benefits accrued but unpaid prior to the date of this Opinion and Award payment shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred, or to be incurred to effect a cure, give relief or shorten the period of disability suffered by plaintiff as a result of the injury by accident of 29 May 1987, when the bills have been submitted to and approved by the Commission.
3. An attorney's fee in the amount of 25 percent of all compensation due plaintiff is hereby approved for plaintiff's counsel, and shall be paid by deducting 25 percent from the accrued amounts due, and making every fourth check payable directly to plaintiff's counsel.
4. Defendants shall pay all costs, including an expert witness fee in the amount of $600.00 to Dr. Samuel Chewning.
 S/ _________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________________ BERNADINE BALLANCE DEPUTY COMMISSIONER
JRW/tmd 10/4/94