The Deputy Commissioner held that the defendant-employer's offer of the microfilm clerk's job was not proof that plaintiff was no longer disabled on the authority of caselaw holding that a defendant-employer's willingness to create a job in order to terminate total disability benefits is not proof that plaintiff is capable of earning wages within the meaning of the Act. Peoples
v. Cone Mills, 316 N.C. 426, 342 S.E.2d 798 (1986); N.C.G.S. § 97-2(9). Defendants argue that the Commission should take into account that the federal Americans with Disabilities Act requires that covered employers assemble tasks and modify workplaces to accommodate persons such as the plaintiff. To the extent the ADA makes it more likely that a job will be "ordinarily available in the competitive job market", its effect should be considered.Peoples, at 438. It is not our role to theorize about what jobs might or should become available to the impaired, particularly since the "reasonable accommodation" required of covered employers will vary with the resources and circumstances of the individual company. The evidence here fails to prove that the microfilm job was "ordinarily available in the competitive job market" even after the advent of ADA, or that it was a full time job with this employer prior to its offer to the claimant. Tr. pp. 50-51.
We have considered the issues raised on plaintiff's "cross application for review" and find no good grounds for altering or adding to the Deputy Commissioner's decision. See, e, g., Hepler
v. Red Bird Cab, I.C. No. 859934, 30 April 1993.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS from the Opinion and Award of the Deputy Commissioner the following
FINDINGS OF FACT
1. Plaintiff is a 5'11-1/2" morbidly obese 35 year-old black male weighing approximately 380 to 390 pounds. Plaintiff has had a weight problem his entire life. He dropped out of school in the tenth grade when his father died to help raise the family and reads poorly.
2. After initially working at a sawmill in South Carolina for four years, plaintiff went to the Job Corps for two years in Kentucky where he obtained an auto mechanics certificate, but was unsuccessful in obtaining his GED because of his difficulty reading. Prior to becoming employed by defendant Krispy Creme Doughnut Company, plaintiff changed tires and did some mechanic work at the Goodyear Tire Center in Woodleaf, South Carolina. Plaintiff also pumped gas, changed tires, and did light mechanic work at Jamestown Motors and Tommy Vestal Tire Center in Winston-Salem. Finally, plaintiff changed tires at Forsyth Tire Center in Winston-Salem requiring him to lift from 50 to 100 pounds and thereby the type of medium to heavy work he can no longer do because of the permanent knee injury giving rise hereto.
3. On March 1, 1988 plaintiff became employed by defendant-employer as a material handler. This job not only required him to operate a forklift, but also involved heavy work frequently requiring him to lift up to 50 pounds and occasionally up to 100 pounds, which, as aforesaid, he is no longer able to do because of his permanent knee injury.
4. Plaintiff sustained the right knee injury giving rise hereto on March 1, 1991, when he caught his foot on a riser and twisted his knee causing tears of the medial and lateral meniscus as well as a medial plica syndrome. As a result, plaintiff underwent partial medial and lateral meniscectomies and a medial plica excision. These corrective surgeries were performed by Dr. John Ritchie in April of 1991 after his condition had not improved with conservative treatment.
5. Although he was still experiencing a problem with his right knee buckling and nearly falling, plaintiff, in June of 1991, attempted to return to work for defendant-employer. Plaintiff developed incapacitating pain and swelling from his March 1, 1991 knee injury resulting again in total disability thereby on July 11, 1991. The Industrial Commission's second award herein based on the Form 26 Supplemental Memorandum of Agreement dated July 17, 1991 and approved by the Industrial Commission on August 6, 1991 thereby becoming a binding Commission award.
6. Because of these same knee problems Dr. Ritchie referred plaintiff to another orthopedic surgeon for evaluation, Dr. Jerome Jennings of Winston-Salem, who initially saw him on August 20, 1991 and attempted a conservative course of treatment, including a rehabilitation program to increase the strength in his injured leg.
7. With the conservative course of treatment provided by Dr. Jennings plaintiff experienced slow improvement in his condition and on September 9, 1991 again attempted to return to work for defendant-employer as an Operator I, which involved the same type of lifting requirements as his previous material handler's job.
8. Despite his knee pain plaintiff continued working in the same capacity until October 7, 1991 when his right knee buckled as a result of his March 1, 1991 knee injury. Plaintiff's knee had buckled on a number of occasions before this time. When plaintiff's knee buckled on October 7, 1991 plaintiff fell on the same knee on the concrete floor resulting in him again becoming totally disabled by his March 1, 1991 knee injury. The Industrial Commission's third award herein based on the Form 26 Supplemental Memorandum of Agreement dated October 11, 1991 and approved by the Industrial Commission on November 14, 1991 thereby becoming a binding final Industrial Commission award.
9. When plaintiff was seen by Dr. Jennings two days later his knee was not only painful and swollen, but he was walking with a significant limp and using a cane. Because of his concern about knee instability Dr. Jennings subsequently scheduled plaintiff for an arthroscopic evaluation and surgery. On October 21, 1991 plaintiff underwent a partial medical meniscectomy as well as arthroscopic debridment with removal of loose bodies of chrondral defects of the posterior quarter of the medial femoral condyle.
10. On or about April 29, 1992 when he was rated for permanent-partial disability by Dr. Jennings plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following his March 1, 1991 knee injury and the corrective surgical procedures necessitated thereby. Plaintiff retained a twenty-five (25) percent permanent-partial disability of the right leg as a result of the same injury, which materially aggravated plaintiff's existing osteoarthritis thereby proximately contributing to his ultimate disability.
11. In the interim Dr. Jennings had referred plaintiff to Martinat Outpatient Rehabilitation Center for the work-hardening program he attended from January 7, 1992 until March 16, 1992. However, plaintiff remains unable to return to his regular material handler's job for defendant-employer or the type of medium to heavy work he had always done. Plaintiff is only capable of less than sedentary work that does not require lifting and carrying or standing and walking.
12. Although on November 21, 1991 plaintiff was involved in an automobile accident when he was struck from behind by another vehicle resulting in a neck injury for which he was treated by a chiropractor, Alan Graham, from November 25, 1991 to February 10, 1992, he did not reinjure his right knee in the same accident.
13. In an effort to assist plaintiff in returning to the type of less than sedentary work required by his permanent right knee injury defendant-carrier engaged the services of a vocational rehabilitation specialist, Carol Wheeler, of American Rehabilitation, Inc. Ms. Wheeler from the end of March through late July of 1992 attempted, without success, to find the type of selective job placement plaintiff will require because of his injury, lack of education, and lack of other prior work experience.
14. As indicated by Ms. Wheeler's July 24, 1992 correspondence to plaintiff's former counsel, Debra Jessup, Mr. Alexander did cooperate in those efforts. If he had not, it was incumbent on defendants to move the Industrial Commission for an Order compelling him to do so. It was also incumbent on defendant to request that his compensation benefits be stopped until plaintiff cooperated. Defendant-employer never made such a motion in this case, and, based upon the evaluation of the witnesses by the hearing Deputy, the credible evidence would not support a motion alleging failure of Mr. Alexander to cooperate such as would engender an Order compelling him to do so, much less a suspension of his benefits until he had.
15. Although plaintiff wanted to return to work for defendant-employer, they did not have suitable work available for him and despite considerable efforts for an approximate four month period the involved vocational rehabilitation specialist was unable to locate suitable alternate work.
16. On July 29, 1992 plaintiff returned to Dr. Jenning's for re-evaluation of his incapacitating right knee problem. Dr. Jenning's recommended a professionally supervised weight loss program similar to the one at Duke because his weight was contributing to those problems and his condition would never improve unless plaintiff lost significant weight in at least the 150 pound range.
17. Thereafter, the involved vocational rehabilitation specialist, Carol Wheeler, arranged for plaintiff to enroll in a weight loss program at the Family Practice Center at Bowman Gray School of Medicine in Winston-Salem under the supervision of Dr. Joseph C. Konen. Dr. Konen not only recommended that plaintiff return to Martinat Rehabilitation Center for a pool walking exercise program, but some type of in-house program to allow for daily monitoring of his food intake. Although Carol Wheeler attempted to arrange for plaintiff's food intake to be monitored at Goodwill, it did not offer the appropriate in-house monitoring required because plaintiff was poorly motivated to attempt to lose weight himself and is unable to take responsibility for his own eating behavior. For this reason plaintiff did not lose any appreciable weight through the outpatient program at Baptist Hospital and the only way he will ever do so is to be enrolled in an inpatient program like the one at Duke University Medical Center for the morbidly obese. His attendance at the water pool exercise program was also inconsistent, this was least in part due the fact that he was significantly depressed as a result of his incapacitating knee injury and in part due to the significant cold and associated bronchitis he had developed from his run down condition because of attempting to fast and lose weight himself without taking the necessary vitamins Dr. Konen had prescribed or otherwise following Dr. Konen's recommendations.
In September of 1991 Carol Wheeler also arranged for him to enroll in the GED program at Forsyth Technical College because his limited education was contributing to plaintiff's inability to obtain the selective alternate employment he requires.
18. In early December of 1992 defendant-employer identified a job potentially within plaintiff's physical limitations that was to become available in February of the following year. The particular job was that of a microfilm clerk responsible for sorting, microfilming and shredding records. The job was ordinarily done by college students during the Summer, Christmas or Thanksgiving Holidays or by temporary help when microfilming was required at other times of the year. Thus it was a job that was not done on a regular day-to-day and continuing basis. Defendant-employer, which had not earlier been able or willing to find plaintiff suitable alternate employment despite his desire to return to work, was willing to modify the job to a part-time one allowing plaintiff to work 20 to 25 hours a week. The job was primarily a sedentary one, but it would have required plaintiff to lift and carry boxes of work from the storage area to the microfilmer for microfilming and then to the shredder for shredding, However, in order to accommodate plaintiff's limitations defendant-employer was willing to have someone else do the necessary lifting and carrying and standing and walking. Because of his difficulty walking required him to use a cane, defendant-employer was also willing to place a bench halfway to his work station to allow plaintiff to rest when he came in to and left work.
19. Under the foregoing circumstances, the modified microfilm clerk's job is the type of tailored or created job that would not be available in the open and competitive labor market, is not reflective of plaintiff's actual wage earning capacity and is a job that plaintiff could not be compelled to accept. Therefore, other than to bear on his motivation to return to work, plaintiff's failure to accept this type of tailored or created job is irrelevant to his wage earning capacity as are the reasons for that failure.
20. On February 9, 1993 plaintiff was scheduled to return to work as a microfilm clerk, but after three days during which he did not, defendant-employer terminated him from its employ on February 12, 1993. Subsequently, defendant filed the Form 24 Application to Stop Payment of Benefits that was approved and has not since sought to provide rehabilitation, of a vocational or medical nature, to allow him to return to the type of less than sedentary work plaintiff will require.
21. As aforesaid, as a result of his permanent right knee injury plaintiff is unable to return to his regular material handler's job or the type of medium to heavy work he had always done; but rather, is limited to the type of less than sedentary work described in the above Findings of Fact and there is no credible evidence that the same work is available for someone of plaintiff's age, education, background and work experience having the physical limitations he does, much less that plaintiff can obtain the same in an open and competitive labor market.
22. For the reasons already stated, the modified microfilm clerk's job is not suitable employment and despite attempting to do so defendant-employer has been unable to find the type of alternate job he will require.
23. To the extent defendant-employer desires to reinstate vocational rehabilitation efforts, plaintiff is obligated to cooperate in those same efforts or to have his compensation benefits suspended until he does. If defendant-employer desires to offer the type of inpatient weight loss program that plaintiff will require, he is obligated to accept the same because it is not only in his best interest to lose substantial weight, but to do so will significantly improve his knee condition.
24. Plaintiff's former attorney in this matter petitioned the Commission to approve a fee, and served a copy on his current counsel. It shows that she undertook the matter on a 25% contingency agreement; that she expended 31.5 hours on plaintiff's behalf; that her hourly rate is $100.00 per hour; and, included a signed statement from the plaintiff acknowledging that she "has done substantial legal work . . . and is entitled to be paid fair value for her services on an hourly basis."
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. As a result of the permanent knee injury he sustained on March 1, 1991 plaintiff had remained totally disabled since the Industrial Commission approved defendant-employer's Form 24 Application to Stop Payment of Benefits on March 10, 1993 entitling him to compensation at a rate of $166.68 per week from March 10, 1993 to the date of the hearing before the Deputy Commissioner, and thereafter continuing at the same rate so long as he remains totally disabled. G.S. § 97-2(6); G.S. § 97-29.
2. For the reasons described in the above Findings of Fact, the microfilm clerk's job offered was not suitable employment; but rather, is the type of created or tailored job referred to in thePeoples v. Cone Mills. Peoples v. Cone Mills, 316 N.C. 426
(1986). N.C.G.S. § 97-32.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff, on account of his continuing total disability, compensation at a rate of $166.68 per week from March 10, 1993 to September 21, 1993 and thereafter continuing at the same rate so long as he remains totally disabled. Such compensation as has accrued shall be paid in lump sum with interest, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of twenty-five (25) percent of the accrued compensation benefits due under the above award is hereby approved for plaintiff's present and former counsel, which shall be deducted from the same award and forwarded directly thereto. Thirty-one hundred fifty dollars ($3,150.00) shall be deducted from the accrued portion of the award and paid directly to plaintiff's former attorney, Debra Regin Jessup of Winston-Salem. For the balance of his fee, defendant-carrier shall forward every fourth compensation check payable hereunder directly to plaintiff's current counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
4. Defendants shall bear the costs; however, the Motion of plaintiff's counsel for assessment of a ten (10) percent penalty is DENIED because defendants stoppage of benefits was authorized by the Industrial Commission when its Form 24 Application was approved thereby.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________________ FORREST H. SHUFORD, II DEPUTY COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER
JRW/RCH/tmd 2/7/95