The Full Commission has reviewed this matter based upon the record of the proceedings before Commissioner Bernadine S. Ballance, who heard this case as a Deputy Commissioner, and on the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to change the holding of the prior Opinion and Award. The Opinion and Award, however has been re-written as follows, including the additions relating to the credit now allowed in defendant's favor.
* * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. On 12 October 1992, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and defendant-employer, Tyson Foods, Inc., was self-insured.
2. At said time, the employee-employer relationship existed between plaintiff and defendant-employer.
3. The sole issue for determination at the hearing was whether plaintiff had suffered a compensable injury under the Workers' Compensation Act.
4. Plaintiff has not worked for defendant-employer since 12 October 1992.
5. The medical records of the following medical providers shall be admitted into evidence. Dr. Sam Stone of Lowry's Family Medicine; Dr. Thomas Fleischer, Carolina Orthopedic Surgery Associates; Dr. Steve Misckiewicz, Riverview Medical Center and Piedmont Medical Center.
6. In addition to the stated medical records, the parties agreed to stipulate into evidence the following:
 a) That while on his leave of absence, the claimant received disability pay from Tyson Foods;
 b) That after he was terminated from Tyson, the claimant received unemployment compensation;
c) Plaintiff's attendance records;
 d) Employer-defendant interrogatories to employee-plaintiff;
 e) Employee-plaintiff interrogatories to employer-defendant;
f) Plaintiff-employee's health records;
 g) Other matters contained in Stipulated Exhibits 1-22.
* * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the injury giving rise to this claim, plaintiff was 53 years old, having been born 3 April 1940, and he had completed the sixth grade. Plaintiff has very little reading and writing ability.
2. Plaintiff worked for defendant-employer from 30 September 1987 through 12 October 1992, except for a brief period in 1989 when he left work in August and was rehired in September.
3. From the date of his rehiring in September 1989, plaintiff worked as a "rake down person" in the comminuted meat department and his normal job duties involved raking chicken out from overhead vats with a long wooden rake.
4. On 12 October 1992, the plaintiff was assigned by Ray Greene, his immediate supervisor, to the job of lifting and stacking boxes of chicken which were packed in ice and weighed approximately 72 pounds. The boxes had to be stacked on a pallet from floor level to a height which extended above plaintiff's shoulder level. Plaintiff continuously packed and stacked these boxes of chicken from about 8:00 a.m. until 3:45-4:00 p.m.
5. At approximately 3:45 p.m. on 12 October 1992, near the end of his shift, plaintiff was turning and lifting a box of chicken to be stacked on top of other boxes when he experienced the sudden onset of sharp pain accompanied by a sensation that felt like hot water radiating up his back and felt a stinging pain in the lower part of his back. Plaintiff rested for a while and when the pain decreased in intensity, he continued with his work. The shift ended at 4:00 p.m.
6. Plaintiff did not report his injury immediately because he believed that the pain would get better with rest. Plaintiff's pain and discomfort continued, however, as he drove himself home and during the night.
7. Following the incident at work on 12 October 1992, plaintiff's wife, Thelma Hayes, observed that plaintiff was having difficulty moving normally as he walked to their house from his truck. Plaintiff told his wife that he had hurt his back while stacking boxes of chicken at work.
8. On 13 October 1992, plaintiff's wife drove him to work. Plaintiff reported his back injury to Sylvia Stinson, his supervisor; Kathy Fuss, a plant nurse; Elaine Edwards, the plant's supervisor of nurses and to various other people at work on 13 October 1992 and on occasions thereafter.
9. The credible evidence of record reveals that plaintiff appeared to others to be in pain and that he was having difficulty in moving on 12 October 1992 and 13 October 1992. Plaintiff's employee health record has an entry dated 13 October 1992, at 8:30 a.m. which states the following: "C/O stacking off racks. Back became painful. IPRIN given for pain. K. Fuss". Plaintiff was given authorization to go home at said time. The Full Commission finds that this corroborates plaintiff's version of how and where he was injured.
10. On 14 October 1992, plaintiff returned to work and complained of the same symptoms as the day before. Plaintiff was authorized at that time by Ray Greene to go home.
11. On 20 October 1992, plaintiff sought and received medical treatment from Dr. Steve Misckiewicz at Riverview Medical Center. Based upon the medical records from said visit, plaintiff reported to Irene Helms, a nurse practitioner, that his low back pain began about a week before. Plaintiff reported that he was unloading large crates of chicken and felt a sharp pain in his back; that the pain resolved within a few minutes; that he didn't think about it again until later that night when the pain returned and that he has been in pain since said time. Plaintiff described his pain as lower back pain, mainly on the right, radiating into both hips. He also related to Irene Helms that he had had some problems with lumbar back strain many years before, but that it had not bothered him in the last 10 or 15 years. Plaintiff was treated at Riverview Medical Center on several occasions and was subsequently referred to Dr. Sam Stone.
12. Plaintiff began treatment with Dr. Sam Stone on 2 November 1992. According to the progress notes, plaintiff related to Dr. Stone that he sustained an on-the-job injury. The doctor's notes state, "apparently twisted or fell lifting something on 12 October 1992 at Holly Farms."
13. Plaintiff was thereafter treated by Dr. Thomas G. Fleischer, beginning 12 December 1992. Plaintiff reported to Dr. Fleischer that his back problem began while lifting chicken boxes and stacking and icing them.
14. Plaintiff was treated conservatively by Dr. Fleischer from December, 1992 through March, 1993. When his symptoms did not improve significantly, Dr. Fleischer decided to do an MRI scan and it was discovered that plaintiff had a focal herniated disk at L5-S1 on the right compressing the right S1 nerve root. Plaintiff also had spinal stenosis at L4-L5 and L3-L4. Dr. Fleischer indicated that plaintiff's injury occurred on 3 October 1992. No weight or credibility is given to this date in Dr. Fleischer's notes by the Full Commission, in that it appears to be an error in recording the history on the initial visit, rather than a question of credibility on the part of the plaintiff.
15. Dr. Fleischer released plaintiff to return to work on 8 February 1993. However, due to recurring back pain, plaintiff was unable to return to work, and the Full Commission finds that plaintiff's failure to return to work at said time was justified in that the subsequent MRI taken in March 1993 supports his contention that he was unable to work due to pain.
16. Defendant produced evidence through the testimony of various witnesses that plaintiff told them that he was experiencing a flare-up of an old back injury. Plaintiff's statements to these witnesses are not given any weight by the Full Commission on the issue of causation, in that plaintiff had not seen a doctor at the time and could not have known the nature and extent of his injuries.
17. The evidence presented by Thelma Hayes, and through the medical reports corroborate the testimony of plaintiff on how his injury occurred. The Full Commission finds that any discrepancies in one or more of the medical reports concerning the date of the accident and how it occurred are minor and are hereby not given significant weight. 18. The Full Commission gives no weight or credibility to the evidence presented by defendant which appears to suggest or imply that plaintiff's symptoms and back injury were related to an old injury which occurred approximately fifteen years prior and were not work related. Plaintiff had not missed any time from work with defendant-employer prior to 12 October 1992 due to back injury or complaints of back pain.
19. The competent evidence supports a finding that plaintiff injured his back on 12 October 1992 while lifting and stacking heavy boxes of chicken weighing approximately 72 pounds at work. As plaintiff turned while lifting and stacking a box of chickens, he felt a sudden and immediate sharp pain that radiated up his back and a stinging pain in the lower part of his back. At said time plaintiff was performing work assigned by his supervisor and the work assigned was not a part of plaintiff's regular job duties. Therefore, the incident on 12 October 1992 constituted an injury by accident arising out of and in the course of plaintiff's employment with defendant-employer which resulted from a specific traumatic incident of the work assigned.
20. Plaintiff's average weekly wage as computed from the Form 22 wage chart was $335.86, yielding a compensation rate of $223.92 per week.
21. Plaintiff was released to return to work on 25 October 1992 with restrictions which could not be accommodated by defendant-employer. Plaintiff took a medical leave of absence through 1 February 1993. Plaintiff was fired from her job on 25 January 1993 while on medical leave.
22. Defendant denied that plaintiff sustained a compensable back injury and plaintiff has not been paid any temporary total disability compensation. An Interlocutory Opinion and Award was entered herein on 29 April 1994 finding and concluding that plaintiff did suffer a compensable injury. Defendant thereafter sent plaintiff for an Independent Medical Examination by Dr. David DuPuy, a board certified orthopedist. Dr. DuPuy opined that plaintiff is physically unable to perform the duties of his former job with defendant-employer due to his work injury of 12 October 1992. Defendant also retained limited vocational rehabilitation services for plaintiff. Patrick Clifford, the vocational rehabilitation consultant opined that plaintiff is unable to perform his pre-injury job duties.
22. Defendant-employer offered no work that plaintiff could do within his restrictions from the date of injury through 12 March 1993. Defendant-employer maintained that no light duty work was available for plaintiff until March, 1995 when three light duty positions were identified and offered to plaintiff. The light duty work offered would have paid $6.00 per hour which was less than plaintiff's pre-injury wages.
23. Prior to the job offers, defendant-employer had advised the vocational rehabilitation consultant that no light duty work was available for plaintiff as of 5 September 1994.
24. Plaintiff participated in physical therapy for purposes of work conditioning which was recommended by Dr. DuPuy. The physical therapy caused plaintiff's condition to worsen and it was terminated by Dr. DuPuy.
25. According to Dr. DuPuy, plaintiff reached maximum medical improvement on 12 January 1995 and had a 5% permanent partial impairment to the back resulting from his 12 October 1992 job related injury. Dr. DuPuy restricted plaintiff to a medium type job classification with lifting restrictions of 35 to 50 pounds. However, at that time, no Functional Capacity Evaluation or MRI had been done.
26. A Functional Capacity Evaluation was performed for plaintiff on 6 February 1995. Although the evaluation concluded that maximum effort was not given due to symptom magnification, the evaluation also concluded that plaintiff had an extremely limited view of what he is able to do and that plaintiff viewed himself as extremely disabled. Dr. DuPuy opined that based upon his examination of plaintiff and his findings, he knew that plaintiff experienced pain during the Functional Capacity Evaluation. The evaluator recommended an 8 to 10 week Comprehensive Work Hardening Program "to extinguish symptom magnification, make the client feasible for competitive employment, and return to work". Defendant did not attempt to follow through with this recommendation. Defendant thereafter offered plaintiff a choice of three light duty jobs which were either not yet in existence or were not made available in the prior 2 1/2 years since plaintiff's injury.
27. The results of plaintiff's functional capacity evaluation indicate that he is capable of sedentary work lifting no more than 10 pounds on an occasional basis and that his lifting ability on a frequent and constant basis is negligible. Dr. DuPuy, during deposition testimony, stated that plaintiff was capable of sedentary to light work based on the Functional Capacity Evaluation and his physical findings. He did not believe that plaintiff could do a job where he would have to sit all day. He needed to be able to move around, stand some and sit some. He further opined that plaintiff could handle a job which involved lifting of approximately 15 pounds. This opinion concerning plaintiff's restrictions appear inconsistent with the restrictions given on 12 January 1995.
28. The Full Commission finds based on the greater weight of he evidence that plaintiff is capable of working in a sedentary to light job classification where he can alternate between sitting and standing as needed and would not be required to lift more than 15 pounds. The jobs of "styler", "pin feathers" and "coupon placer" were within plaintiff's physical capabilities; however, the coupon placer job was not a job plaintiff could do considering his limited education and intelligence.
29. There is insufficient evidence of record from which to determine whether the job of "styler" and "pin feathers" are jobs which normally exist in defendant-employer's place of business, or which the plaintiff could find elsewhere in the competitive job market under normally prevailing market conditions. From the time of his injury, defendant-employer consistently maintained that no light duty work was available. Plaintiff was terminated over two years before these jobs were offered in March of 1995. Without any communication with plaintiff about returning to work, defendant-employer took their vocational rehabilitation consultant off the case and sent plaintiff a letter stating that he should report to work and that three light duty jobs were suddenly available.
30. Plaintiff has refused to accept the jobs offered by defendant. Plaintiff indicated to Patrick Clifford that he can drive, stand, sit and walk for about half of an hour and then he has to sit down or lie down. Based upon these limitations, plaintiff would be required to stop and rest or to lie down each day on his way to and from work given that he lives approximately forty miles away from where he would have to work, which would take approximately an hour to drive. Even if plaintiff had accepted the job offered earning $6.00 per hour, he would have been partially disabled due to diminished earning capacity and would be entitled to compensation in the amount of $63.94 per week, based upon 2/3 of the difference between his average weekly wage before and after the injury.
31. The Full Commission finds that plaintiff's refusal to accept the jobs offered by defendant was justified based on the credible evidence of record in this case.
32. As a result of injury by accident resulting from a specific traumatic incident on 12 October 1992, plaintiff was unable to earn wages in his former employment with defendant-employer or in any other employment from 13 October 1992 through the date of the hearing before Commissioner Ballance on 15 December 1993 and continuing thereafter through the present.
33. This is a denied claim and plaintiff has been left to his own ability and means to obtain medical treatment for his pain and other symptoms.
34. Plaintiff received benefits from a non-contributory disability plan during a portion of the period for which he is entitled to temporary total disability compensation, and said benefits were not due and payable under the Workers' Compensation Act when paid. During this same period, plaintiff also received an amount of unemployment benefits.
* * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury to his back as described in the above findings of fact, arising out of and in the course of his employment with defendant-employer on 12 October 1992. Said injury is the direct result of a specific traumatic incident of the work assigned and constitutes an injury by accident within the meaning of G.S. 97-2 (6).
2. As a result of his injury by accident of 12 October 1992, plaintiff is entitled to be paid by defendant temporary and total disability compensation at the rate of $223.92 per week for the period beginning 13 October 1992 through the present, and continuing until further orders from the Commission or until plaintiff returns to work earning the same or greater wages. G.S. § 97-29. This compensation is subject to the attorney's fee and credit approved herein.
3. The Notice of Accident and Injury given by plaintiff to defendant-employer was proper and timely and fulfills the requirements of G.S. § 97-22.
4. There is insufficient evidence from which to determine whether the jobs offered to plaintiff by defendant-employer are jobs that are available in the competitive job market; thus, plaintiff's wage earning capacity can not be computed based upon these proffered jobs. The North Carolina Workers' Compensation Act does not permit employers to avoid their duty to pay compensation by offering an injured worker modified employment, which under normal prevailing market conditions could not be found elsewhere and which the employer could terminate at will. Peoples v. Cone Mills Corporation, 316 N.C. 426342 S.E.2d 79 (1986). The burden of proof is on defendant on this issue.
5. As a result of his 12 October 1992 compensable injury, plaintiff is entitled to have defendant provide all reasonable medical treatment and expenses related to said injury. G.S. § 97-25.
6. Defendant is entitled to a credit for payments of benefits to plaintiff from a non-contributory disability plan and for any unemployment benefits received by plaintiff during the period for which plaintiff is entitled to temporary total disability compensation. G.S. § 97-42; G.S. § 97-42.1.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission Modifies the prior Opinion and Award, but Affirms the holding of Commissioner Ballance and enters the following:
AWARD
1. Subject to the attorney's fee and credit provided herein, defendant shall pay to plaintiff temporary total disability compensation at the rate of $223.92 per week for the period beginning 13 October 1992 and continuing through the present and until such time as defendant receives further orders from the Commission or plaintiff returns to work earning the same or greater wages.
2. Defendants shall pay all reasonable medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury on 12 October 1992, when bills for the same have been approved pursuant to Industrial Commission procedures.
3. Defendant is entitled to a credit for payments of benefits to plaintiff from a non-contributory disability plan and for any unemployment benefits received by plaintiff during the period for which plaintiff is entitled to temporary total disability compensation.
4. An attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff, and is payable as follows: twenty-five percent (25%) of the accrued amount of compensation due plaintiff shall be deducted and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check due plaintiff thereafter.
5. Defendant shall pay the costs due this Commission.
 S/ _________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _________________ COY M. VANCE COMMISSIONER