The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Moore Hoag and the briefs and oral arguments before the Full Commission. The appealing parties have shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's decision and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Hartford Accident Indemnity is the carrier on the risk.
4. Plaintiff sustained a compensable injury by accident to her hand on 17 May 1993.
5. Plaintiff was paid temporary total disability from 17 May 1993 until 10 April 1994, when she returned to work. She was paid no compensation from 22 November 1996, when she was laid off, through the present time.
6. Plaintiff's compensation rate on the Form 21 is $216.54, as calculated from her average weekly wage of $324.80.
7. On 23 June 1993, the parties entered into a Form 21 agreement whereby plaintiff was to be paid for "necessary" weeks subject to wage verification.
8. The parties stipulate to the Form 25R signed by Dr. Robert Kahn that the Plaintiff has 75% disability to each of the index finger, second finger, third finger, and fourth finger of her left hand.
9. The parties have stipulated a bound and indexed set of medical records.
10. The issues to be resolved are as follows:
a. Is plaintiff entitled to temporary total benefits for the period of temporary disability between date of "lay-off" on 22 November 1996 until the present date, with credit for unemployment compensation?
b. Is plaintiff entitled to prosthetic fingers?
c. Is plaintiff entitled to receive compensation based on the difference between the wages she earned at the time of the injury compared to the wages earned thereafter?
d. Is plaintiff entitled to a 10% penalty payment for unsafe conditions consisting of OSHA violations pursuant to N.C. Gen. Stat. § 97-12?
e. Is plaintiff entitled to attorney fees and costs from defendants because defendants' defense was not based upon reasonable grounds? N.C. Gen. Stat. § 97-88.1.
***********
Based upon all of the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Plaintiff is 51 years old (DOB: 2/17/48) and a high school graduate. She is divorced, has six children and lives in Ahoskie. The two youngest children reside with plaintiff.
2. Plaintiff had worked for the defendant-employer, Easco Aluminum Corp., for a period of 20 years prior to 17 May 1993. She operated a Press Brake, which was a mechanical press for bending aluminum pieces or cutting aluminum pieces.
3. Plaintiff worked as a machine operator on Press Brake machines at Easco on an average of two or three times a week for twenty years, except for a two-year stint in the anodizing department. Plaintiff admitted to receiving proper and adequate training on how to safely operate the Press Brake.
4. Plaintiff's job did not have production requirements, but did have production guidelines. Plaintiff was never reprimanded for not meeting production, and her supervisor, Melvin Gurganus, had never written anybody up for not meeting a production rate.
5. On 17 May 1993, plaintiff was operating Press Brake Machine No. 4, but she was not feeling well. She was hot, feeling sick, and suffering from dizzy spells or light-headedness. This was a condition she often experienced, yet she would not tell anybody when she was suffering from this condition. She related the condition to her high blood pressure, or some type of inner ear problem or "balance disease." Because she was hot that morning, she wanted to find somebody to bring her a fan, and as she turned around, the last thing she remembers is holding onto the machine to hold herself up. She was not holding any aluminum part at the time of her accident, and plaintiff admitted that the thirty inch piece with which she was working makes it impossible to get your hand into the machine while fabricating it. Plaintiff does not recall how her fingers got into the machine, nor how the machine activated, but it did, severely injuring four fingers on her left hand. This was stipulated to be compensable under the Workers' Compensation Act.
6. As a result of her injury, plaintiff underwent several operations and was left with four partially amputated fingers on her left hand. She received temporary total disability benefits at a weekly compensation rate of $216.54 beginning on her date of injury until she returned to work on 11 April 1994. On 20 December 1993, although not at maximum medical improvement, plaintiff received a 75% permanent partial disability rating to each of her four fingers on her left hand from her treating physician, Dr. Kahn. On 7 February 1994, she was released from Dr. Kahn's care.
7. Plaintiff returned to work at Easco on 11 April 1994, in Quality Control as an Inspector, at a pay rate of $9.37 an hour, which was equal to or higher than her prior rate of pay. This job has been in existence at Easco since the plant opened. There are three employees on each shift who perform this function of mainly measuring and checking the quality of metal pieces within the plant. The inspector positions were held by female employees and all of them would need help from time to time lifting heavy parts.
8. The inspector job at Easco was a competitive job in the local job market. This was illustrated by a research analysis done by Annette Ruth, a certified rehab counselor with American Rehabilitation, in which various industries in Hertford County were found to have similar positions with similar job duties. In addition to being called quality inspectors, they were also called graders, testers, and assurance inspectors.
9. Dr. Joan Rose viewed eight available jobs on videotape and approved only the Saw Helper position for plaintiff. However, the inspector position was not included on the video for her consideration, since there was not an opening at the inspector position at that time. There was no doubt that the inspector position was suitable employment for the plaintiff, in that she satisfactorily performed this job for two and a half years.
10. Billy Saulter was a paid expert, who testified on behalf of plaintiff. Mr. Saulter owns a company called Safety Plus. He met with plaintiff only once, and he never observed the machines inside Easco. According to Mr. Saulter, there is an exception within OSHA requirements pertaining to Press Brakes. CFR 1910.212 states that guards should be applied where possible.
11. Melvin Gurganus has worked at Easco for twenty-five years as a tool and die maker and more recently as a supervisor. Melvin Gurganus testified that he is not familiar with the NorthCarolina Occupational Safety and Health Standards for GeneralIndustry and is not involved with the plant's safety-related concerns such as compliance with OSHA regulations. He was also uncertain as to the requirements regarding guarding and any exception that may be provided for with regard to the Press Brake.
12. Due to market conditions, Easco has a lay-off approximately every two years. The union contract with the employer requires that individual layoffs be determined by department, based on seniority. Plaintiff, with a relatively "new" job in Quality Control, was laid off effective 24 November 1996, and received unemployment benefits for 13 weeks at $320.00 per week.
13. Plaintiff had had carpal tunnel in her right hand since 1991, and she received prior disability ratings to her right hand fingers in 1985. She also had high blood pressure, an inner ear problem, and a blood clot in her leg. She gets headaches, becomes dizzy and has occasional numbness in her arm and eyes.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to her hand on 17 May 1993. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury, plaintiff was disabled and was unable to earn wages of any kind from 17 May 1997 to 10 April 1994. She was paid temporary total disability during this period. Plaintiff returned to work as a Quality Control Inspector on 10 April 1994 at the same or greater wages than she was earning at the time of her injury. There is a presumption that disability lasts until the employee returns to work; there is likewise a presumption that the disability ends when the employee returns to work at the same or greater wages.Tucker v. Lowdermilk, 233 N.C. 185,63 S.E.2d 109 (1951). Therefore, plaintiff is not entitled to temporary total benefits from and after the date of lay-off.
3. The inspector position at Easco has no similarities with the job that was characterized as "make-work" in the case ofPeoples v. Cone Mills, 316 N.C. 426, 342 S.E.2d 798
(1986). In Peoples, the job offered to the claimant had never before existed at Cone Mills and it was created especially for plaintiff. Furthermore, the claimant was not required to work "if he did not feel like doing so." At Easco, plaintiff filled a position that had been at the plant for over 20 years. She was one of three inspectors working that specific position at Easco, and she worked a complete shift. The job was not created for her, and it was not modified especially for plaintiff. The only help plaintiff needed was with the heavier parts, and that was true with all three females who worked as inspectors.
4. Plaintiff is not entitled to receive compensation based on the difference between the wages she earned before and after her injury, since plaintiff returned to work for two and a half years at the same or higher rate of pay. N.C. Gen. Stat. § 97-30.
5. The plaintiff has the burden of proof to show a willful failure of the employer to comply with any statutory requirement. Since the plaintiff has not met this burden, the request for a ten percent (10%) increase in compensation is hereby DENIED. N.C. Gen. Stat. § 97-12.
6. Plaintiff is entitled to receive prosthetic fingers pursuant to N.C. Gen. Stat. § 97-25.
7. The defense of this case was based on reasonable grounds and, therefore, plaintiff is not entitled to attorney fees and costs from the defendants. N.C. Gen. Stat. § 97-88.1
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is not entitled to temporary total disability payments after 22 November 1996. Therefore, the Award of same by the Deputy Commissioner is hereby reversed.
2. Plaintiff is entitled to have prosthetic fingers provided by the defendants.
3. Defendants shall bear the costs.
This 3rd day of June 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER