***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer and the briefs and arguments of the parties. Plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The employment relationship existed between the parties at all relevant times.
3. Defendant-employer was self-insured.
4. Plaintiff's average weekly wage may be determined by the Form 22.
5. Plaintiff injured his right arm in the course and scope of his employment on October 10, 1998.
6. The parties submitted into evidence 35 pages of medical records from various providers.
7. The deposition testimony of E. Brown Crosby, M.D. is a part of the evidentiary record.
 ***********
Based upon the greater weight of the evidence of record, the Full Commission finds as follows
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 56 years of age and had completed the 12th grade. Plaintiff has work experience in manual labor jobs, including insulation work, pipefitting and welding. He began working as a detention officer for the Haywood County Sheriff's office around the end of April 1998.
2. On October 10, 1998, plaintiff tripped over a forklift that was parked in the impound lot and fell, his right arm striking the ground. As a result, plaintiff sustained an impacted fracture to the radial head of the right arm, which was initially assessed at the emergency room as minimally displaced.
3. Plaintiff's fractured elbow was treated by Dr. J. Thomas McClure of Mountain Orthopedic Associates, who first saw him on October 12, 1998. Dr. McClure reviewed the x-rays and assessed a non-displaced radial head fracture. Dr. McClure kept plaintiff's arm in a sling and advised him to work on range of motion exercises.
4. Dr. McClure also told plaintiff that he should not lift anything and could not use his arm to restrain an inmate during this healing period, but allowed him to go back to light duty work. Plaintiff went back to work for defendant, performing lighter duty tasks such as answering the telephone. However, as admitted by Lavern Phillips, the jail administrator, there was in fact no light duty work available with defendant at the main or satellite jails due to the potential for hazardous situations that would require plaintiff to perform outside of his physical restrictions.
5. When LaVerne Phillips, the jail administrator, hired plaintiff in April, Mr. Phillips informed plaintiff that he would be sent for training in November for required certification as a detention officer. Plaintiff informed Mr. Phillips that the training would be unnecessary, as plaintiff would be leaving the job prior to the certification mandate. However, prior to plaintiff's elbow injury, no specific date was set for plaintiff's departure.
6. Following his injury, plaintiff continued to work until approximately November 13, 1998 for the sheriff's office in a light duty capacity even though there was in fact no light duty position which was available in the marketplace and not make-work. Mr. Phillips testified that plaintiff intended to voluntarily quit on November 30, 1998. However, plaintiff testified that Mr. Phillips sent plaintiff home but did not inform him that his employment was terminated. Plaintiff was paid his full salary for the month of November and part of December 1998. Plaintiff learned of his alleged voluntary resignation when inquiring with Sedgwick James regarding ongoing benefits. As a result, plaintiff requested additional pay from defendant-employer for four days work to which he felt he was entitled and was informed that he was still on the payroll and had not been terminated. No separation form was signed by plaintiff, as would be the case with a voluntary resignation. In fact, the Report of Separation indicates a March 1, 1999 date of separation with the reason being "at the discretion of the sheriff" rather than a voluntary resignation by plaintiff.
7. In early November 1998, Dr. McClure started plaintiff in a physical therapy program. In December, he added strengthening exercises. By February 19, 1999, Dr. McClure found that plaintiff was at maximum medical improvement. On his examination, Dr. McClure found a range of motion from 15 degrees to 130 degrees with 80 degrees of supination and 90 degrees of pronation. Plaintiff had normal upper right extremity strength. Dr. McClure assessed plaintiff with a three percent permanent impairment to his right upper extremity.
8. Plaintiff was examined by Dr. Pflueger for the purpose of a second opinion. Dr. Pflueger saw plaintiff on August 31, 1999 and again on January 5, 2000, after an MRI of the right elbow had been performed. Dr. Pflueger's assessment was very similar to Dr. McClure's. Dr. Pflueger found a range of motion from 20 to 130 degrees with full pronation and supination. The MRI showed no indication of loose bodies. Dr. Pflueger was of the opinion that plaintiff had improved as much as he would post-injury; however; he did not provide a permanent impairment assessment.
9. Plaintiff also was evaluated by Dr. E. Brown Crosby, a hand specialist, who saw him on August 21, 2000. Dr. Crosby found plaintiff's range of motion to be from -5 degrees to 110 degrees, which findings differed from those of both Dr. McClure and Dr. Pflueger. Dr. Crosby also noted arthritis of plaintiff's right elbow, apparently of longstanding duration or at least existing prior to plaintiff's injury by accident. However, plaintiff's arthritis could have been aggravated by the accident. Dr. Crosby recommended that plaintiff not perform heavy manual labor with his right arm, and assessed him with a ten percent permanent partial impairment of the right arm.
10. Although plaintiff had discussed leaving his employment with defendant-employer prior to a mandated certification, plaintiff did not voluntarily resign from his employment with defendant-employer. In fact, plaintiff was under restrictions that prevented him from performing his regular job duties and defendant-employer had no suitable employment available within plaintiff's restrictions. The work which plaintiff was performing after his injury by accident was in fact make-work which is not indicative of plaintiff's wage earning capacity. Plaintiff's arm has not returned to pre-injury status and he remains incapable of performing his former job resulting in a loss of wage earning capacity.
11. Based upon the Form 22 and the attached documentation submitted by agreement of the parties, plaintiff's average weekly wage is $475.63, yielding a weekly compensation rate of $317.12.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. The light duty work provided to plaintiff by defendant-employer is not suitable employment available in the marketplace but is instead make-work. Therefore, plaintiff's light duty employment with defendant-employer is not indicative of plaintiff's wage earning capacity. Although plaintiff has been released to restricted work, the greater weight of the evidence indicates that because of plaintiff's restrictions, age, education and previous work experience, he is incapable of earning the same or greater wages in any employment as a result of his admittedly compensable injury by accident of October 10, 1998. Peoples v. Cone Mills, 316 N.C. 426, 342 S.E.2d 798 (1986);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993); N.C. Gen. Stat. § 97-29.
2. Subject to a reasonable attorney's fee awarded herein and to the deduction of salary already paid to plaintiff by defendant for the same period, plaintiff is entitled to ongoing total disability benefits at a weekly rate of $317.12 beginning November 13, 1998 and continuing until plaintiff returns to work at the same or greater average weekly wage or further order of the Commission.
3. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to all medical expenses incurred by plaintiff for reasonably necessary medical treatment related his right arm injury sustained on October 10, 1998, for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Plaintiff's average weekly wage is $475.63, yielding a weekly compensation rate of $317.12. N.C. Gen. Stat. § 97-2(5).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to a reasonable attorney's fee awarded herein and to the deduction of salary already paid to plaintiff by defendant for the same period, defendant shall pay plaintiff ongoing total disability benefits at a weekly rate of $317.12 beginning November 13, 1998 and continuing until plaintiff returns to work at the same or greater average weekly wage or further order of the Commission. All accrued amounts shall be paid in one lump sum.
2. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendant shall pay all medical expenses incurred by plaintiff for reasonably necessary treatment related to his right arm injury of October 10, 1998, for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff is hereby approved for plaintiff's counsel. This amount shall be deducted from the lump sum due to plaintiff and paid directly to his counsel and thereafter by way of every fourth check.
4. Defendant shall pay the costs, including an expert witness fee of $300.00 to Dr. E. Brown Crosby, if not already paid.
This the ___ day of January 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER