***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger, and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award, and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts, and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, and at the hearing before the Deputy Commissioner on 28 September 2000 as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. All parties are properly before the Industrial Commission, which has jurisdiction over this matter.
3. All parties are subject to, and bound by the North Carolina Workers' Compensation Act.
4. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
5. Defendant-carrier filed an Industrial Commission Form 60, which represented that on 12 September 1997, plaintiff sustained a compensable injury when he tripped and fell and sustained a strain of his neck and shoulder.
6. An employment relationship existed between plaintiff-employee and defendant-employer during the relevant times herein.
7. Plaintiff's average weekly wage at the time of the injury was $499.95.
8. Plaintiff has been receiving temporary total disability benefits from the carrier.
9. An indexed set of medical records marked as exhibit 1 was received into evidence.
10. A videotape marked as defendant's exhibit 2 was received into evidence.
11. A surveillance report was marked as defendant's exhibit 3 and received into evidence.
 *********** ADDITIONAL EXHIBITS
1. An incident report marked as defendant's exhibit 1 was received into evidence.
2. A job description for the telephone and administrative assistant position offered to the plaintiff was marked as defendant's exhibit 2 and received into evidence.
3. A January 18, 1999 letter from Mary Conner to plaintiff was marked as defendant's exhibit 3 and received into evidence.
4. Shipp Medical Management records were marked as defendant's exhibit 4 and received into evidence.
 ***********
Based upon the competent evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before former Deputy Commissioner Bost on 28 September 2000, plaintiff was fifty-two (52) years of age, with his date of birth being 5 January 1948. Plaintiff has an eighth grade education, and has not been successful in obtaining his GED. Prior to working for defendant-employer, plaintiff had worked as a route supervisor and on site manager for cafeteria vending machines.
2. On the date of his injury, plaintiff had been working with defendant-employer for approximately thirty (30) years, the most recent seven (7) as a warehouse manager. In that capacity, plaintiff's duties included lifting and organizing supplies, filling orders, and maintaining an accurate inventory. In the performance of these duties, plaintiff lifted items weighing as much as sixty (60) pounds, and was on his feet the majority of the workday.
3. On 12 September 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer when he tripped over a piece of exposed metal and fell.
4. On 20 October 1997, plaintiff sought treatment from his family physician, Dr. Neill Musselwhite, with complaints of neck and shoulder pain, which plaintiff believed to be related to his injury by accident. Plaintiff again sought treatment on 17 November 1997 and 18 November 1997, with complaints of left leg, back and neck pain. An MRI revealed a right side disc herniation at the C7-C6 level that was projecting into the spinal canal, and a neural foremen with likely impingement at the C7 nerve root. Subsequently, Dr. Musselwhite referred plaintiff to Dr. Robert Wilfong.
5. On 19 January 1998, Dr. Wilfong performed a cervical laminectomy procedure. Following this surgery, Dr. Wilfong initially opined that plaintiff might be able to return to restricted work in May 1998. However, when plaintiff resumed complaints of pain, a second MRI revealed additional problems. For these problems, plaintiff underwent a anterior discectomy, and fusion of the cervical disc at the C6-C7 level. Following this second surgery, plaintiff began to experience shoulder weakness, and was referred to Dr. Adam Brown for a second opinion.
6. Dr. Brown examined plaintiff on 1 October 1998, and recommended additional diagnostic testing, and referred plaintiff to Dr. Thaddeus Coin, who performed nerve conductions studies. With the results of these studies, Dr. Coin diagnosed plaintiff as having chronic right side C5 or C6 cervical radiculopathy, chronic C6 and C7 cervical radiculopathy, and right carpal tunnel syndrome. Dr. Brown also continued to treat plaintiff through January 1999, at which time he opined that plaintiff had reached maximum medical improvement and released him to return to light duty work.
7. Plaintiff has also received treatment following his 12 September 1997 injury by accident from Dr. Murray K. Seidal, beginning in February 1998. Following a period of consistent complaints of left knee pain, Dr. Seidel performed a left knee arthroscopy procedure on 18 December 1998. Following the surgery, Dr. Seidel recommended that plaintiff begin intensive physical therapy to develop strength in his left knee.
8. The problems plaintiff developed in his left knee are related to the 12 September 1997 injury by accident.
9. Ms. Jane Shipp, a rehabilitation nurse, was assigned to plaintiff's case by defendants. On 4 January 1999, Ms. Shipp questioned Dr. Seidel as to whether plaintiff could return to work in a sitting position answering telephones. On 1 February 1999, Dr. Seidel was provided a job description for a Telephone and Administrative Assistant job. This job description was prepared by Ms. Mary Conner, an employee of defendant-employer, and included a list of transitional duties. Plaintiff was offered this position with defendant-employer, with his starting date being 18 January 1999. Although Dr. Seidel approved this job description, he was of the opinion that the best course of action for plaintiff would be to undergo vocational retraining.
10. Prior to the time Ms. Conner prepared the job description, one did not exist with defendant-employer for the position of Telephone and Administrative Assistant, and no other employee of defendant-employer worked in such a position. Furthermore, based upon Ms. Conner's testimony, the transitional duties referenced in the description were indicative of an employee returning to light duty work, who would be transitioning back to their regular position.
11. On 18 January 1999, plaintiff did not return to work for defendant-employer in the Telephone and Administrative Assistant job.
12. In July 2000, Dr. Seidel performed surgery on plaintiff's shoulder which would have prevented him from working in any capacity for up to four weeks. At the time of the hearing before the Deputy Commissioner on 28 September 2000, plaintiff remained under the care of Dr. Seidel for his neck and shoulder problems.
13. Based upon the credible evidence of record, the Telephone and Administrative Assistant job offered to plaintiff was make work, and not a position ordinarily available in the competitive job market. Therefore, it was not suitable, and plaintiff did not refuse suitable employment.
14. As the result of his 12 September 1997 injury by accident, plaintiff has been unable to earn any wages in any suitable position with defendant-employer, or in any other employment for the period 13 September 1997 through the present and continuing.
15. As the result of his 12 September 1997 injury by accident, plaintiff would benefit from continued medical treatment.
16. Plaintiff's average weekly wage at the time of the injury was $499.95, which yields a compensation rate of $333.47.
 ***********
Based on the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage at the time of the injury was $499.95, which yields a compensation rate of $333.47. G.S. § 97-2(5).
2. On 12 September 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
3. Because the position offered by defendants was a make work job, not ordinarily available in the competitive job market, it was not a suitable position. See, Peoples v. Cone Mills Corp., 316 N.C. 426, 438,342 S.E.2d 798, (1986). As such, plaintiff did not unjustifiably refuse suitable employment. G.S. § 97-32.
4. As a result of his 12 September 1997 injury by accident, plaintiff is entitled to be paid, by defendants, ongoing total disability compensation at the rate of $333.47 per week for the period of 13 September 1997 through the present and continuing until such time as he returns to work, or until further order of the Commission. G.S. §97-29.
5. As the result of his 12 September 1997 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred, or to be incurred, including those involving his knee. G.S. §§ 97-25; 97-25.1
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff ongoing total disability compensation at the rate of $333.47 per week for the period of 13 September 1997 through the present and continuing until such time as he returns to work, or until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred, or to be incurred by plaintiff, including those involving his knee, as the result of his 12 September 1997 injury by accident.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER