***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive *Page 2 
further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Phillips with modifications and enters the following Opinion and Award.
 ***********
Prior to the hearing of this matter before the Full Commission, Plaintiff filed a motion to admit additional evidence. Defendants filed a response to Plaintiff's motion. After reviewing Plaintiff's motion and Defendants' response, the Full Commission in its discretion hereby DENIES Plaintiff's motion to admit additional evidence pursuant to N.C.I.C. Rule 701(6).
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at the time of Plaintiff's injury and contraction of the occupational disease.
4. An employer/employee relationship existed between the parties at the time of Plaintiff's injury and contraction of the occupational disease.
5. Defendant-Employer in this case is Goodyear Tire and Rubber and the Claims Administrator liable on the risk is Liberty Mutual Insurance Company. *Page 3 
6. Plaintiff sustained a compensable injury to his spine and left upper extremity on July 19, 2005. (I.C. No. 559201)
7. Plaintiff contracted a compensable occupational disease to his left hand on or about January 18, 2006.
8. Plaintiff suffered an alleged occupational disease to his right shoulder and arm on January 18, 2006. (I.C. No. 622446)
9. Plaintiff contracted an alleged occupational disease to his right hand on or about February 22, 2008. (I.C. No. 994526)
10. Plaintiff's average weekly wage at the time of his stipulated July 19, 2005 compensable injury was $1,203.88 which yields a maximum compensation rate for the year of 2005 of $704.00.
11. Plaintiff was paid the entire day of each of the above-mentioned injuries and/or contraction of an occupational disease.
12. Plaintiff is still currently employed for Goodyear Tire Rubber.
 ***********
The following documentary evidence was received as:
 EXHIBITS a. Stip. Ex. #1: IC forms, Medical Records, Defendants' discovery, Job Description, Printed Videotaped Job Description with Ergonomic Evaluation
 b. Plaintiff's Ex. #1: Form 21
 c. Depositions: Frank Murray, Dr. Mark Mikles, and Dr. Jeffrey Kobs
 *********** *Page 4 ISSUES
1. Whether Plaintiff sustained a compensable occupational disease to his right upper extremity pursuant to N.C. Gen. Stat. § 97-53(13)?
2. If so, to what benefits is Plaintiff entitled to under the Workers' Compensation Act?
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the deputy commissioner, Plaintiff was 58 years old. On July 19, 2005, Plaintiff sustained an injury by accident to his left shoulder and a specific traumatic incident to his neck when he threw a tire into the gondola. Plaintiff attempted to catch the tire when it rolled back which caused his left arm to pop.
2. Plaintiff was referred to Dr. Jeffrey Kobs at Raleigh Orthopaedic for treatment of his left shoulder. A left shoulder MRI taken in September 2005 revealed "supraspinatus tendinosis, AC joint arthrosis, and osteophytosis without evidence for a rotator cuff tear or labral tear."
3. During Dr. Kobs' November 30, 2005 evaluation of Plaintiff's shoulder, he noted pain radiating into the left arm. After an EMG/NCS study, Dr. Kobs diagnosed Plaintiff with ongoing carpal tunnel syndrome and recommended left release surgery. On December 14, 2005, Plaintiff also reported right shoulder pain, but indicated that he had had trouble with his right shoulder two years ago and that he thought it might be arthritis. Plaintiff underwent left CTS release surgery on April 7, 2006. As of May 17, 2006, Dr. Kobs concluded Plaintiff was at *Page 5 
maximum medical improvement (MMI) for the left wrist treatment and could return to work without restrictions. Dr. Kobs did not assign an additional rating to Plaintiff's left arm.
4. During his left shoulder treatment, Plaintiff was also evaluated for a cervical disk herniation wherein he was followed by Dr. Mark Mikles with Raleigh Orthopaedic. A cervical spine MRI was taken on October 18, 2005 which reflected "multilevel spondylotic disease of the cervical spine most remarkable at C6-7 where there is moderate right foraminal stenosis caused by a broad based disc bulge, osteophyte complex and tiny central disc protrusion."
5. On December 19, 2006, Dr. Kobs performed a left subacromial decompression and labral debridement arthroscopically on Plaintiff's left shoulder and recommended physical therapy and range of motion strengthening exercises following surgery.
6. Plaintiff was placed at MMI on June 13, 2007 and assigned a 15% permanent partial disability (PPD) rating to his left upper extremity. Plaintiff was assigned permanent work restrictions to include no overhead lifting and no lifting greater than 30 pounds waist-to-shoulder and no repetitive motion above the shoulder level.
7. On January 18, 2006, Plaintiff returned for follow-up with Dr. Mikles who concluded Plaintiff had reached MMI for the neck and could be released to return to work with the restrictions assigned by Dr. Kobs on December 8, 2005. He also assigned Plaintiff a 5% PPD rating to the neck.
8. On August 9, 2006, Plaintiff returned for follow-up with Dr. Mikles. Dr. Mikles noted Plaintiff sustained a work-related injury on July 19, 2005, which led to immediate neck pain which radiated into the left arm. Residual left arm numbness and tingling persisted after the date of injury. Upon review of the July 20, 2006 CT myelogram, Dr. Mikles noted "diffuse cervical spondylosis with mild C5-6 central osteophyte with no significant cord compression and *Page 6 
no significant foraminal narrowing, except mild with C4-5 right foraminal narrowing." Dr. Mikles did not recommend surgical intervention and instructed Plaintiff to follow up as needed.
9. Following his release at MMI for his compensable shoulder injury, Defendant-Employer placed Plaintiff into a position in the Tire Room operating a truck. Plaintiff performed this position for a day and half but began to experience severe pain due to the repetitive motion required of the position. Based upon his painful condition and the fact that it was found that the Truck Operator position in the Tire Room actually required lifting above his 30 pounds weight-lifting restrictions, Plaintiff was transferred to the Wrap Bead Service position with Defendant-Employer.
10. One of the primary requirements of the Wrap Bead Service position was wrapping beads which required putting beads on the rubber and marking it with tape. This was a repetitive job performed throughout the course of the day. Plaintiff was not required to perform this duty due to the repetitive work involved and the problems it would cause his shoulder. Plaintiff was the only employee in the Wrap Bead Service position that did not have to perform this duty.
11. Plaintiff was required to use a fork truck to put wire and rubber on the back ends of units, mark the beads on the front of the units, put the loads in storage, and keep record of it. Plaintiff also had to manually place wires in certain positions after delivering it on the fork truck and that these reels of wire weigh approximately 1,000 to 1,500 pounds. Plaintiff was required to manually move empty spools which weighed between 125 to 185 pounds.
12. On January 18, 2008, Plaintiff returned to Dr. Mikles with complaints of intermittent upper neck pain and right arm pain. A December 11, 2007 MRI revealed spondylosis from C4 TO C7 with right greater than left foraminal narrowing at C5-6 and right disc protrusion at C6-7. *Page 7 
13. An EMG/NCS was performed on February 8, 2008, which revealed evidence of very mild right C6 radiculopathy and moderate-to-severe right median neuropathy at the wrist. Dr. Mikles reviewed the EMG/NCS results on February 22, 2008 and did not recommend surgery, but provided Plaintiff a right wrist splint for his carpal tunnel syndrome and indicated Plaintiff had reached MMI. Dr. Mikles assigned a permanent partial impairment rating of 5% to Plaintiff's neck and continued spondylosis and disc herniations.
14. Dr. Kobs released Plaintiff to return to work with restrictions of no lifting greater than 30 pounds and no overhead restrictions.
15. Dr. Kobs opined and the Full Commission finds that Plaintiff's job did not place him at increased risk of developing right-sided carpal tunnel syndrome. In addition, Dr. Kobs had no opinion as to whether Plaintiff's job activities placed him at an increased risk of developing carpal tunnel syndrome over someone in the general public. Dr. Kobs, however, did state to a reasonable degree of medical certainty that Plaintiff was performing duties outside of his restrictions while marking beads and pulling the empty spools.
16. Dr. Mikles testified that Plaintiff's job duties over a course of 30 years could have exacerbated Plaintiff's right carpal tunnel syndrome and would expose Plaintiff to a greater risk of exacerbation than the general public so exposed. Dr. Mikles deferred to Dr. Kobs' opinion with regards to the right shoulder.
17. The videotape and analysis performed by William McClure of the wrap bead service job provided that the wrap bead service position did not reflect risk factors above acceptable risks for the development of upper extremity disorders.
18. The Full Commission gives greater weight to the opinions of Dr. Kobs, Plaintiff's treating physician. *Page 8 
19. The Full Commission finds based upon the greater weight of the credible evidence that Plaintiff has failed to prove that he sustained a compensable occupational disease to his right upper extremity, right shoulder, or right arm.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Compensation under the Workers' Compensation Act may be awarded for an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13) if two conditions are met: (1) the disease must be "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment"; and (2) the disease cannot be an "ordinary disease of life to which the general public is equally exposed outside of the employment." Booker v. Medical Center,297 N.C. 458, 468, 256 S.E. 2d 189, 196 (1979). The claimant bears the burden of proving the existence of an occupational disease.Gay v. J.P. Stevens Co.,79 N.C. App. 324, 331, 339 S.E. 2d 490, 494 (1986).
2. Plaintiff is entitled to compensation for his admittedly compensable left sided carpel tunnel syndrome. N.C. Gen. Stat. S97-53(13). However, Plaintiff has failed to prove that he sustained a compensable occupational disease to his right shoulder, right arm, or right upper extremity. Id.; Booker v. Medical Center,297 N.C. 458, 468, 256 S.E. 2d 189, 196 (1979).
3. Plaintiff's position with Defendant-Employer of Wrap Bead Service is unsuitable as it requires physical activity in excess of the work restrictions assigned by his treating physicians, Dr. Mikles and Dr. Kobs and has been so modified that Plaintiff could not find *Page 9 
similar work in the competitive marketplace. Peoples v. Cone MillsCorporation, 316 N.C. 426, 438, 342 S.E.2d 798, 806 (1986).
4. Since Defendants have required Plaintiff to work in the unsuitable position of Wrap Bead Service since August of 2007, after Plaintiff's release for his compensable left arm conditions, Plaintiff is entitled to temporary total disability benefits from August 1, 2007 to the present and continuing until Plaintiff returns to suitable employment or is further ordered by the Industrial Commission. Plaintiff, however, is not entitled to further compensatory benefits if he is working in this position and earning his full salary wages. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to payment of a five percent rating due to his admittedly compensable occupational disease of left carpal tunnel syndrome. N.C. Gen. Stat. § 97-31.
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff in an amount of $704.00 per week from August 1, 2007 to the present and continuing until Plaintiff returns to suitable employment or is further Ordered by the Commission. Defendants are not obligated to compensate Plaintiff for said temporary total disability compensation if Plaintiff has earned full salary wages during this period of time.
2. Defendants shall pay to Plaintiff a five percent disability rating with respect to his admittedly compensable January 18, 2006 occupational disease to his left wrist which equates to 10 weeks of disability at the maximum compensation rate for 2005. *Page 10 
3. A reasonable attorney's fee of 25% of the compensation awarded to is hereby approved to be deducted from the lump sum due Plaintiff and paid directly to Plaintiff's Counsel.
4. Defendants shall bear the costs.
This the 23rd day of February 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DIANNE C. SELLERS COMMISSIONER